In Re Canons of Professional Ethics
Order Entered November 4, 1936.

Pfr Curiam.—It appearing to this Court that the Canons of Professional Ethics adopted by the American Bar Association constitutes an appropriate standard of professional ethics to be given official recognition by the Supreme Court of Florida as a guide to be followed in the investigation and determination of cases and controversies wherein a consideration of the subject of professional and judicial ethics may become material, it is now ordered that the following "Canons of Professional Ethics," and "Canons of Judicial Ethics," as formulated and published by the American Bar Association, are hereby adopted and approved for observance and application in the State of Florida, same to be published as an annex to the rules of this Court in official reports.

"PREAMBLE

"In America, where the stability of Courts and of all departments of government rests upon the approval of the people, it is peculiarly essential that the system for establishing and dispensing Justice be devoloped to a high point of e ciency and so maintained that the public shall have absolute confidence in the integrity and impartiality of its administration. The future of the Republic, to a great extent, depends upon our maintenance of Justice pure and unsullied. It cannot be so maintained unless the conduct and motives of the members of our profession are such as to merit the approval of all just men.

"No code or set of rules can be framed, which will particularize all the duties of the lawyer in the varying phases of litigation or in all the relations of professional life. The following canons of ethics are adopted by the American Bar

Association as a general guide, yet the enumeration of particular duties should not be construed as a denial of the existence of others equally imperative, though not specifically mentioned.

"1. THE DUTY OF THE LAWYER TO THE COURTS.

"It is the duty of the lawyer to maintain towards the Courts a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever there is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected.

"2. THE SELECTION OF JUDGES.

"It is the duty of the Bar to endeavor to prevent political considerations from outweighing judicial fitness in the selections of Judges. It should protest earnestly and actively against the appointment or election of those who are unsuitable for the Bench; and it should strive to have elevated thereto only those willing to forego other employments, whether of a business, political or other character, which may embarrass their free and fair consideration of questions before them for decision. The aspiration of lawyers for judicial position should be governed by an impartial estimate of their ability to add honor to the office and not by a desire for the distinction the position may bring to themselves.

"3. ATTEMPTS TO EXERT PERSONAL INFLUENCE ON THE COURT.

"Marked attention and unusual hospitality on the part of a lawyer to a Judge, uncalled for by the personal relations of the parties, subject both the Judge and the lawyer to misconstructions of motive and should be avoided. A lawyer should not communicate or argue privately with the Judge as to the merits of a pending cause, and he deserves rebuke and denunciation for any device or attempt to gain from a Judge special personal consideration or favor. A self-respecting independence in the discharge of professional duty, without denial or diminution of the courtesy and respect due the Judge's station, is the only proper foundation for cordial personal and official relations between Bench and Bar.

"4. WHEN COUNSEL FOR AN INDIGENT PRISONER.

"A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason, and should always exert his best efforts in his behalf.

"5. THE DEFENSE OR PROSECUTION OF THOSE ACCUSED OF CRIME.

"It is the right of the lawyer to undertake the defense of a person accused of crime, regardless of his personal opinion as to the guilt of the accused; otherwise innocent persons, victims only of suspicious circumstances, might be denied proper defense. Having undertaken such defense, the lawyer is bound by all fair and honorable means, to present every defense that the law of the land permits, to the end that no person may be deprived of life or liberty, but by due process of law.

"The primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done.

The suppression of facts or the secreting of witnesses capable of establishing the innocence of the accused is highly reprehensible.

"6. ADVERSE INFLUENCES AND CONFLICTING INTERESTS.

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of the canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidence forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed.

"7. PROFESSIONAL COLLEAGUES AND CONFLICTS OF OPINION.

"A client's proffer of assistance of additional counsel should not be regarded as evidence of want of confidence, but the matter should be left to the determination of the client. A lawyer should decline association as colleague if it is objectionable to the original counsel, but if the lawyer first retained is relieved, another may come into the case.

"When lawyers jointly associated in a cause cannot agree as to any matter vital to the interest of the client, the conflict of opinion should be frankly stated to him for his final determination. His decision should be accepted unless the

nature of the difference makes it impracticable for the lawyer whose judgment has been overruled to co-operate effectively. In this event it is his duty to ask the client to relieve him.

"Efforts, direct or indirect, in any way to encroach upon the business of another lawyer, are unworthy of those who should be brethren at the Bar; but, nevertheless, it is the right of any lawyer, without fear or favor, to give proper advice to those seeking relief against unfaithful or neglectful counsel, generally after communication with the lawyer of whom the complaint is made.

"8. ADVISING UPON THE MERITS OF A CLIENT'S CAUSE.

"A lawyer should endeavor to obtain full knowledge of his client's cause before advising thereon, and he is bound to give a candid opinion of the merits and probable result of pending or contemplated litigation. The miscarriages to which justice is subject, by reason of surprises and disappointments in evidence and witnesses, and through mistakes of juries and errors of Courts, even though only occasional, admonish lawyers to beware of bold and confident assurances to clients, especially where the employment may depend upon such assurance. Whenever the controversy will admit of fair adjustment, the client should be advised to avoid or to end the litigation.

"9. NEGOTIATIONS WITH OPPOSITE PARTY.

"A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particularly to avoid everything that may tend to mislead a party not

represented by counsel, and he should not undertake to advise him as to the law.

"10. ACQUIRING INTEREST IN LITIGATION.

"The lawyer should not purchase any interest in the subject matter of the litigation which he is conducting.

"11. DEALING WITH TRUST PROPERTY.

"Money of the client or other trust property coming into the possession of the lawyer should be reported promptly, and except with the client's knowledge and consent should not be commingled with his private property or be used by him.

"12. FIXING THE AMOUNT OF THE FEE.

"In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other business while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the

amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade.

"13. CONTINGENT FEES.

"Contingent fees, where sanctioned by law, should be under the supervision of the Court, in order that clients may be protected from unjust charges.

"14. SUING A CLIENT FOR A FEE.

"Controversies with clients concerning compensation are to be avoided by the lawyer so far as shall be compatible with his self-respect and with his right to receive reasonable recompense for his services; and lawsuits with clients should be resorted to only to prevent injustice, imposition or fraud.

"15. HOW FAR A LAWYER MAY GO IN SUPPORTING A CLIENT'S CLAUSE.

"Nothing operates more certainly to create or to foster popular prejudice against lawyers as a class, and to deprive the profession of that full measure of public esteem and confidence which belongs to the proper discharge of its duties than does the false claim, often set up by the unscrupulous in defense of questionable transactions, that it is the duty of the lawyer to do whatever may enable him to succeed in winning his client's cause.

"It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause.

"The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. No fear of judicial disfavor or public unpopularity should restrain him from the full discharge of his duty. In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense. But it is steadfastly to be borne in mind that the great trust of the lawyer is to be performed within and not without the bounds of the law. The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client.

"16. Restraining Clients from Improprieties.

"A lawyer should use his best effort to restrain and to prevent his clients from doing those things which the lawyer himself ought not to do, particularly with reference to their conduct toward Courts, judicial officers, jurors, witnesses, and suitors. If a client persists in such wrongdoing, the lawyer should terminate their relation.

"17. Ill-Feeling and Personalities Between Advocates.

"Clients, not lawyers, are the litigants. Whatever may be the ill feeling existing between clients, it should not be allowed to influence counsel in their conduct and demeanor toward each other or toward suitors in the case. All per-

sonalities between counsel should be scrupulously avoided. In the trial of a cause it is indecent to allude to the personal history or the personal peculiarities and idiosyncrasies of counsel on the other side. Personal colloquies between counsel which cause delay and promote unseemly wrangling should also be carefully avoided.

"18. TREATMENT OF WITNESSES AND LITIGANTS.

"A lawyer should always treat adverse witnesses and suitors with fairness and due consideration, and he should never minister to the malevolence or prejudice of a client in the trial or conduct of a cause. The client cannot be made the keeper of the lawyer's conscience in professional matters. He has no right to demand that his counsel shall abuse the opposite party or indulge in offensive personalities. Improper speech is not excusable on the ground that it is what the client would say if speaking in his own behalf.

"19. APPEARANCE OF LAWYER AS WITNESS FOR HIS CLIENT.

"When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client.

"20. NEWSPAPER DISCUSSION OF PENDING LITIGATION.

"Newspaper publications by a lawyer as to pending or anticipated litigation may interfere with a fair trial in the Courts and otherwise prejudice the due administration of justice. Generally they are to be condemned. If the extreme circumstances of a particular case justify a statement to the public, it is unprofessional to make it anonymously. An *ex parte* reference to the facts should not go beyond

quotation from the records and papers on file in the court; but even in extreme cases it is better to avoid any *ex parte* statement.

"21. PUNCTUALITY AND EXPEDITION.

"It is the duty of the lawyer not only to his client, but also to the Courts and to the public to be punctual in attendance, and to be concise and direct in the trial and disposition of causes.

"22. CANDOR AND FAIRNESS.

"The conduct of the lawyer before the Court and with other lawyers should be characterized by candor and frankness.

"It is not candid or fair for the lawyer knowingly to misquote the contents of a paper, the testimony of a witness, the language or the argument of opposing counsel, or the language of a decision or a text-book; or with knowledge of its invalidity, to cite as authority a decision that has been overruled, or a statute that has been repealed; or in argument to assert as a fact that which has not been proved, or in those jurisdictions where a side has the opening and closing arguments to mislead his opponent by concealing or withholding positions in his opening argument upon which his side then intends to rely.

"It is unprofessional and dishonorable to deal other than candidly with the facts in taking the statements of witnesses, in drawing affidavits and other documents, and in the presentation of causes.

"A lawyer should not offer evidence, which he knows the Court should reject, in order to get the same before the jury by argument for its admissibility, nor should he address to the Judge arguments upon any point not properly calling for determination by him. Neither should he

introduce into an argument, addressed to the court, remarks or statements intended to influence the jury or bystanders.

"These and all kindred practices are unprofessional and unworthy of an officer of the law charged, as is the lawyer, with the duty of aiding in the administration of justice.

"23. ATTITUDE TOWARD JURY.

"All attempts to curry favor with juries by fawning, flattery or pretended solicitude for their personal comfort are unprofessional. Suggestions of counsel, looking to the comfort or convenience of jurors, and propositions to dispense with argument, should be made to the Court out of the jury's hearing. A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause.

"24. RIGHT OF LAWYER TO CONTROL THE INCIDENTS OF THE TRIAL.

"As to incidental matters pending the trial not affecting the merits of the cause, or working substantial prejudice to the rights of the client, such as forcing the opposite lawyer to trial when he is under affliction or bereavement; forcing the trial on a particular day to the injury of the opposite lawyer when no harm will result from a trial at a different time; agreeing to an extension of time for signing a bill of exceptions, cross interrogatories and the like, the lawyer must be allowed to judge. In such matters no client has a right to demand that his counsel shall be illiberal, or that he do anything therein repugnant to his own sense of honor and propriety.

"25. Taking Technical Advantage of Opposite Counsel: Agreements with Him.

"A lawyer should not ignore known customs or practice of the Bar or of a particular Court, even when the law permits, without giving timely notice to the opposing counsel. As far as possible, important agreements affecting the rights of clients, should be reduced to writing; but it is dishonorable to avoid performance of an agreement fairly made because it is not reduced to writing, as required by rules of Court.

"26. Professional Advocacy Other Than Before Courts.

"A lawyer openly, and in his true character may render professional services before legislative or other bodies, regarding proposed legislation and in advocacy of claims before departments of government, upon the same principles of ethics which justify his appearance before the Courts; but it is unprofessional for a lawyer so engaged to conceal his attorneyship, or to employ secret personal solicitations, or to use means other than those addressed to the reason and understanding, to influence action.

"27. Advertising, Direct or Indirect.

"The most worthy and effective advertisement possible, even for a young lawyer, and especially with his brother lawyers, is the establishment of a well-merited reputation for processional capacity and fidelity to trust. This cannot be forced, but must be the outcome of character and conduct. The publication or circulation of ordinary simple business cards, being a matter of personal taste or local custom, and sometimes of convenience, is not *per se* improper. But solicitation of business by circulars or advertisements, or by personal communications or interviews,

not warranted by personal relations, is unprofessional. It is equally unprofessional to procure business by indirection through touters of any kind, whether allied real estate firms or trust companies advertising to secure the drawing of deeds or wills or offering retainers in exchange for executorships or trusteeships to be influenced by the lawyer. Indirect advertisement for business by furnishing or inspiring newspaper comments concerning causes in which the lawyer has been or is engaged, or concerning the manner of their conduct, the magnitude. of the interests involved, the importance of the lawyer's positions and all other like self-laudation, defy the traditions and lower the tone of our high calling, and are intolerable.

"28. STIRRING UP LITIGATION, DIRECTLY OR THROUGH AGENTS.

"It is unprofessional for a lawyer to volunteer advice to bring a lawsuit, except in rare cases where ties of blood, relationship or trust make it his duty to do so. Stirring up strife and litigation is not only unprofessional, but it is indictable at common law. It is disreputable to hunt up defects in titles or other causes of action and inform thereof in order to be employed to bring suit or collect judgment, or to breed litigation by seeking out those with claims for personal injuries or those having any other grounds of action in order to secure them as clients, or to employ agents or runners for like purposes, or to pay or reward, directly or indirectly, those who bring or influence the bringing of such cases to his office, or to remunerate policemen, court or prison officials, physicians, hospital attaches or others who may succeed, under the guise of giving disinterested friendly advice, in influencing the criminal, the sick and the injured, the ignorant or others, to seek his professional services. A duty to the public and to the profession de-

volves upon every member of the Bar, having knowledge
of such practices upon the part of any practitioner, imme-
diately to inform thereof to the end that the offender may
be disbarred.

"29. UPHOLDING THE HONOR OF THE PROFESSION.

"Lawyers should expose without fear or favor before the
proper tribunals corrupt or dishonest conduct in the pro-
fession, and should accept without hesitation employment
against a member of the Bar who has wronged his client.
The counsel upon the trial of a cause in which perjury has
been committed owe it to the profession and the public to
bring the matter to the knowledge of the prosecuting au-
thorities.   The lawyer should aid in guarding the Bar
against the admission to the profession of candidates unfit
or unqualified because deficient in either moral character
or education.   He should strive at all times to uphold the
honor and to maintain the dignity of the profession and to
improve not only the law but the administration of justice.

"30. JUSTIFIABLE AND UNJUSTIFIABLE LITIGATIONS.

"The lawyer must decliine to conduct a civil cause or to
make a defense when convinced that it intended merely
to harass or to injure the opposite party or to work oppres-
sion or wrong.   But otherwise it is his right, and, having
accepted retainer, it becomes his duty to insist upon the
judgment of the Court as to the legal merits of his client's
claim.   His appearance in Court should be deemed equiv-
alent to an assertion on his honor that in his opinion his
client's case is one proper for judicial determination.

"31. RESPONSIBILITY FOR LITIGATION.

"No lawyer is obliged to act either as adviser or advocate
for every person who may want to become his client.   He
has the right to decline employment.   Every lawyer upon

his own responsibility must decide what business he will accept as counsel, what causes he will bring into Court for plaintiffs, what cases he will contest in Court for defendants. The responsibility for advising as to questionable transactions, for bringing questionable suits, for urging questionable defenses, is the lawyer's responsibility. He cannot escape it by urging as an excuse that he is only following his client's instructions.

"32. THE LAWYER'S DUTY IN ITS LAST ANALYSIS.

"No client, corporate or individual, however powerful, nor any cause, civil or political, however important, is entitled to receive nor should any lawyer render any service or advice involving disloyalty to the law whose ministers we are, or disrespect of the judicial office, which we are bound to uphold, or corruption of any person or persons exercising a public office or private trust, or deception or betrayal of the public. When rendering any such improper service or advice, the lawyer invites and merits stern and just condemnation. Correspondingly, he advances the honor of his profession and the best interests of his client when he renders service or gives advice tending to impress upon the client and his undertaking exact compliance with the strictest principles of moral law. He must also observe and advise his client to observe the statute law, though until a statute shall have been construed and interpreted by competent adjudication, he is free and is entitled to advise as to its validity and as to what he conscientiously believes to be its just meaning and extent. But above all a lawyer will find his highest honor in a deserved reputation for fidelity to private trust and to public duty, as an honest man and as a patriotic and loyal citizen.

## "33. PARTNERSHIPS—NAMES.

"Partnerships among lawyers for the practice of their profession are very common and are not to be condemned. Certain Courts require that lawyers practicing before them shall appear individually and not as members of partnerships. In the formation of partnerships care should be taken not to violate any law locally applicable; and where partnerships are formed and permitted between lawyers who are not all admitted to practice in the local courts, care should also be taken to avoid any misleading name or representation which would create a false impression as to the professional position or privileges of the member not locally admitted. In the formation of partnerships for the practice of law, no person should be admitted who is not a member of the legal profession, duly authorized to practice, and amenable to professional discipline. No person should be held out as a petitioner or member who is not so admitted. In the selection and use of a firm name, one not admitted to practice in the local courts should not be named, lest such use of his name should mislead as to his professional position or privileges. And no false or assumed or trade name should be used to disguise the practitioner or his partnership. The continued use of the name of a deceased or former partner is or may be permissible by local custom, but care should be taken that no imposition or deception is practiced through this use. If a member of the firm becomes a judge, his name should not be continued in the firm name, as it naturally creates the impression that an improper relation or influence is continued or possessed by the firm.

"Partnerships between lawyers and members of other profession or non-professional persons should not be

formed or permitted where a part of the partnership business consists of the practice of law.

"34  DIVISION OF FEES.

"No division of fees for legal services is proper, except with another lawyer, based uupon a division of service or responsibility.  But the established custom of sharing commissions at a commonly accepted rate, upon collections of commercial claims between forwarder and receiver, though one be a lawyer and the other not (being a compensation for valuable services rendered by each), is not condemned hereby, where it is not prohibited by statute.

"36.  INTERMEDIARIES.

"The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer.  A lawyer's responsibilities and qualifications are individual. He should avoid all relations which direct the performance of his duties in the interest of such intermediary.  A lawyer's relation to his client should be personal, and the responsibility should be direct to the client.  Charitable societies rendering aid to the indigent are not deemed such intermediaries.

"A lawyer may accept employment from any organization, such as an association, club or trade organization, to render legal services in any matter in which the organization, as an entity, is interested, but this employment should not include the rendering of legal services to the members of such an organization in respect to their individual affairs.

"The established custom of receiving commercial collections through a lay agency is not condemned hereby.

"36. RETIREMENT FROM JUDICIAL POSITION OR PUBLIC EMPLOYMENT.

"A lawyer should not accept employment as an advocate in any matter upon the merits of which he has previously acted in a judicial capacity.

"A lawyer, having once held public office or having been in the public employ, should not after his retirement accept employment in connection with any matter which he has investigated or passed upon while in such office or employ.

"37. CONFIDENCE OF A CLIENT.

"The duty to preserve his client's confidences outlasts the lawyer's employment, and extends as well to his employees; and neither of them should accept employment which involves the disclosure or use of these confidences, either for the private advantage of the lawyer or his employees or to the advantage of the client, without his knowledge and consent, and even though there are other available sources of such information. A lawyer should not continue employment when he discovers that this obligation prevents the performance of his full duty to his former or to his new client.

"If a lawyer is falsely accused by his client, he is not precluded from disclosing the truth in respect to the false accusation. The announced intention of a client to commit crime is not included within the confidences which he is bound to respect. He may properly make such disclosures as to prevent the act or protect those against whom it is threatened.

"38. COMPENSATION, COMMISSIONS AND REBATES.

"A lawyer should accept no compensation, commissions, rebates or other advantages from others without the knowledge and consent of his client after full disclosure.

"39. WITNESSES.

"Compensation demanded or received by any witness in excess of statutory allowances should be disclosed to the court and adverse counsel. If the ascertainment of truth requires that a lawyer should seek information from one connected with or reputed to be biased in favor of an adverse party, he is not thereby deterred from seeking to ascertain the truth from such person in the interest of his client.

"40. NEWSPAPERS.

"A lawyer may with propriety write articles for publications in which he gives information upon the law; but he should not accept employment from such publications to advise inquiries in respect to their individual rights.

"41. DISCOVERY OF IMPOSITION AND DECEPTION.

"When a lawyer discovers that some fraud or deception has been practised, which has unjustly imposed upon the court or a party, he should endeavor to rectify it; at first by advising his client, and if his client refuses to forego the advantage thus unjustly gained, he should promptly inform the injured person of his counsel, so that they may take appropriate steps.

"42. EXPENSES.

"A lawyer may not properly agree with a client that the lawyer shall pay or bear the expenses of litigation; he may in good faith advance expenses as a matter of convenience, but subject to reimbursement.

"43. PROFESSIONAL CARD.

"The simple professional card mentioned in Canon 27 may with propriety contain only a statement of his name (and those of his lawyer associates), profession, address, telephone number, and special branch of the profession practiced. The insertion of such card in reputable law lists is not condemned and it may there give refereences or name clients for whom the lawyer is. counsel, with their permission.

"WITHDRAWAL FROM EMPLOYMENT AS ATTORNEY OR COUNSEL.

"The right of an attorney or counsel to withdraw from employment, once assumed, arises only from good cause. Even the desire or consent of the client is not always sufficient. The lawyer should not throw up the unfinished task to the detriment of his client except for reasons of honor or self-respect. If the client insists upon an unjust or immoral course in the conduct of his case, or if he persists over the attorney's remonstrance in presenting frivolous defenses, or if he deliberately disregards an agreement or obligation as to fees or expenses, the lawyer may be warranted in withdrawing on due notice to the client, allowing him time to employ another lawyer. So also when a lawyer discovers that his client has no case and the client is determined to continue it; or even if the lawyer finds himself incapable of conducting the case effectively. Sundry other instances may arise in which withdrawal is to be justified. Upon withdrawing from a case after a retainer fee has been paid, the attorney should refund such part of the retainer as has not been clearly earned.

"45. SPECIALISTS.

"The canons of the American Bar Association apply to all branches of the legal profession; specialists in particular

branches are not to be considered as exempt from the application of these principles.

"46.  OATH OF ADMISSION.

"The general principles which should ever control the lawyer in the practice of his profession are clearly set forth in the following Oath of Admission to the Bar, for the willful violation of which disbarment is provided:

*"I do solemnly swear:*

*"I will support the Constitution of the United States and the Constitution of the State of Florida. . . . . . .*

*"I will maintain the respect due to Courts of Justice and judicial officers;*

*"I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;*

*"I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the Judge or Jury by any artifice or false statement of fact or law;*

*"I will maintain the confidence and preserve inviolate the secrets of my client, and will accept no compensation in connection with his business except from him or with his knowledge and approval;*

*"I will abstain from all offensive personality, and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged.*

*"I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any man's cause for lucre or malice.* So HELP ME GOD.

## "Canons or Professional Ethics for Judges
## "Ancient Precedents

" 'And I charged your judges at that time, saying Hear the causes between your brethren, and judge righteously between every man and his brother, and the stranger that is with him.

" 'Ye shall not respect persons in judgment; but ye shall hear the small as well as the great; ye shall not be afraid of the face of man; for the judgment is God's; and the cause that is too hard for you, bring it unto me, and I will hear it.' *Deuteronomy,* 1:16, 17.

" 'Thou shalt not wrest judgment; thou shalt not respect persons, neither take a gift; for a gift doth blind the eyes of the wise, and pervert the words of the righteous.' *Deuteronomy* 16:19.

" "We will not make any judiciaries, constables, sheriffs or bailiffs, but from those who understand the law of the realm and are well disposed to observe it.' *Magna Charta,* 45.

" 'Judges ought to remember that their office is *jus dicere* not *jus dare;* to interpret law, and not to make law, or give law.' ' . . .

" 'Judges ought to be more learned than witty; more reverend than plausible; and more advised than confident. Above all things, integrity is their portion and proper virtue.' . . .

" 'Patience and gravity of hearing is an essential part of justice; and an over speaking judge is no well-tuned cymbal. It is no grace to a judge first to find that which he might have heard in due time from the Bar, or to show quickness of conceit in cutting off evidence or counsel too short; or to prevent information by questions though pertinent.' . . .

" 'The place of justice is a hallowed place; and therefore not only the Bench, but the foot pace and precincts and purprise thereof ought to be preserved without scandal and corruption.' . . .—*Bacon's Essay 'Of Judicature.'*

## "Preamble

"In addition to the Canons of Professional Conduct of Lawyers which it has formulated and adopted, the American Bar Association, mindful that the character and conduct of a judge should never be objects of indifference, and that declared ethical standards tend to become habits of life, deems it desirable to set forth its views respecting those principles which should govern the personal practice of members of the judiciary in the administration of their office. The Association accordingly adopts the following Canons, the spirit of which it suggests as a proper guide and reminder for judges, and as indicating what the people have a right to expect from them.

## "1. Relations of the Judiciary.

"The assumption of the office of judge casts upon the incumbent duties in respect to his personal conduct which concern his relation to the state and its inhabitants, the litigants before him, the principles of law, the practitioners of law in his court, and the witnesses, jurors and attendants who aid him in the administration of its functions.

## "2. The Public Interest.

"Courts exist to promote justice, and thus to serve the public interest. Their administration should be speedy and careful. Every judge should at all times be alert in his rulings and in the conduct of the business of the court, so far as he can, to make it useful to litigants and to the community. He should avoid unconsciously falling into the

attitude of mind that the litigants are made for the courts instead of the courts for the litigants.

"3. CONSTITUTIONAL OBLIGATIONS.

"It is the duty of all judges in the United States to support the Federal Constitution and that of the State whose laws they administer; in so doing, they should fearlessly observe and apply fundamental limitations and guarantees.

"4. AVOIDANCE OF IMPROPRIETY.

"A judge's official conduct should be free from impropriety and the appearance of impropriety; he should avoid infractions of the law; and his personal behavior, not only upon the bench and in the performance of judicial duties, but also in his every-day life should be beyond reproach.

"5. ESSENTIAL CONDUCT.

"He should be temperate, attentive, patient, impartial, and, since he is to administer the law and apply it to the facts, he should be studious of the principles of the law and diligent in endeavoring to ascertain the facts.

"6. INDUSTRY.

"He should exhibit an industry and application commensurate with the duties imposed upon him.

"7. PROMPTNESS.

"He should be prompt in the performance of his judicial duties, recognizing that the time of litigants, jurors and attorneys is of value and that habitual lack of punctuality on his part justified dissatisfaction with the administration of the business of the court.

"8. COURT ORGANIZATION.

"He should organize the court with a view to the prompt and convenient dispatch of its business and he should not

tolerate abuses and neglect by clerks, and other assistants who are sometime prone to presume too much upon his good natured acquiescence by reason of friendly association with him.

"It is desirable too, where the judicial system permits, that he should co-operate with other judges of the same court, and in other courts, as members of a single judicial system, to promote the more satisfactory administration of justice.

"9. CONSIDERATION FOR JURORS and OTHERS.

"He should be considerate of jurors, witnesses and others in attendance upon the court.

"10. COURTESY AND CIVILITY.

"He should be courteous to counsel, especially to those who are young and inexperienced and also to all others appearing or concerned in the administration of justice in the court.

"He should also require, and, so far as his power extends, enforce on the part of clerks, court officers and counsel civility and courtesy to the court and to jurors, witnesses, litigants and others having business in the court.

11. UNPROFESSIONAL CONDUCT OF ATTORNEYS AND COUNSEL.

"He should utilize his opportunities to criticize and correct unprofessional conduct of attorneys and counsellors brought to his attention; and, if adverse comment is not a sufficient corrective, should send the matter at once to the proper investigating and disciplinary authorities.

"12. APPOINTEES OF THE JUDICIARY AND THEIR COMPENSATION.

"Trustees, receivers, masters, referees, guardians and other persons appointed by a judge to aid in the administra-

tion of justice should have the strictest probity and impartiality and should be selected with a view solely to their character and fitness. The power of making such appointments should not be exercised by him for personal or partisan advantage. He should not permit his appointments to be controlled by others than himself. He should also avoid nepotism and undue favoritism in his appointments.

"While not hesitating to fix or approve just amounts, he should be most scrupulous in granting or approving compensation for the services or charges of such appointees to avoid excessive allowance, whether or not excepted to or complained of. He cannot rid himself of this responsibility by the consent of counsel.

"13. KINSHIP OR INFLUENCE.

"He should not act in a controversy where a near relative is a party; he should not suffer his conduct to justify the impression that any person can improperly influence him or unduly enjoy his favor, or that he is affected by the kinship, rank, position or influence of any party or other person.

"14. INDEPENDENCE.

"He should not be swayed by partisan demands, public clamor or considerations of personal popularity or notoriety, nor be apprehensive of unjust criticism.

"15. INTERFERENCE IN CONDUCT OF TRIAL.

"He may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, especially those who are excited or ter-

rified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.

"Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.

"He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment.

"16. Ex Parte Applications.

"He should discourage *ex parte* hearings of applications for injunctions and receiverships where the order may work detriment to absent parties; he should act upon such *ex parte* applications only where the necessity for quick action is clearly shown; if this be demonstrated, then he should endeavor to counteract the effect of the absence of opposing counsel by a scrupulous cross-examination and investigation as to the facts and the principles of law on which the application is based, granting relief only when fully satisfied that the law permits it and the emergency demands it. He should remember that an injunction is a limitation upon the freedom of action of defendants and should not be granted lightly or inadvisedly. One applying for such relief must sustain the burden of showing clearly the necessity and this burden is increased in the absence of the party whose freedom of action is sought to be restrained even though only temporarily.

"17. Ex Parte Communications.

He should not permit private interviews, arguments or communications designed to influence his judicial action, where interests to be affected thereby are not represented before him, except in cases where provision is made by law for *ex parte* application.

"While the conditions under which briefs of arguments are to be received are largely matters of local rule or practice, he should not permit the contents of such brief presented to him to be concealed from opposing counsel. Ordinarily all communications of counsel to the judge intended or calculated to influence action should be made known to opposing counsel.

"18. Continuances.

"Delay in the administration of justice is a common cause of complaint; counsel are frequently responsible for this delay. A judge, without being arbitrary or forcing cases unreasonably or unjustly to trial when unprepared, to the detriment of parties, may well endeavor to hold counsel to a proper appreciation of their duties to the public interest, to their own clients, and to the adverse party and his counsel, so as to enforce due diligence in the dispatch of business before the court.

"19. Judicial Opinions.

"In disposing of controverted cases, a judge should indicate the reasons for his action in an opinion showing that he has not disregarded or overlooked serious arguments of counsel. He thus shows his full understanding of the case, avoids the suspicion of arbitrary conclusion, promotes confidence in his intellectual integrity and may contribute useful precedent to the growth of the law.

"It is desirable that Courts of Appeal in reversing cases and granting new trials should so indicate their views on questions of law argued before them and necessarily arising in the controversy that upon the new trial counsel may be aided to avoid the repitition of erroneous positions of law ,and shall not be left in .doubt by the failure of the court to decide such questions.

"But the volume of reported decisions is such and is so rapidly increasing that in writing opinions which are to be published judges may well take this fact into consideration, and curtail them accordingly, without substantially departing from the principles stated above.

"It is of high importance that judges constituting a court of last resort should use effort and self-restraint to promote solidarity of conclusion and the consequent influence of judicial decision. A judge should not yield to pride of opinion or value more highly his individual reputation than that of the court to which he should be loyal. Except in case of conscientious difference of opinion on fundamental principle, dissenting opinions should be discouraged in courts of last resort.

"20. INFLUENCE OF DECISIONS UPON THE DEVELOPMENT OF THE LAW.

"A judge should be mindful that his duty is the application of general law to particular instances, that ours is a government of law and not of men, and that he violates his duty as a minister of justice under such a system if he seeks to do what he may personally consider substantial justice in a particular case and disregards the general law as he knows it to be binding on him. Such action may become a precedent unsettling accepted principles and may have detrimental consequences beyond the immediate con-

troversy. He should administer his office with a due regard to the integrity of the system of the law itself, remembering that he is not a depositary or arbitrary power, but a judge under the sanction of law.

"21. IDIOSYNCRASIES AND INCONSISTENCIES.

"Justice should not be molded by the individual idiosyncrasies of those who administer it. A judge should adopt the usual and expected method of doing justice, and not seek to be extreme or peculiar in his judgments, or spectacular or sensational in the conduct of the court. Though vested with discretion in the imposition of mild or severe sentences he should not compel persons brought before him to submit to some humiliating act or discipline of his own devising, without authority of law, because he thinks it will have a beneficial corrective influence.

"In imposing sentence he should endeavor to conform to a reasonable standard of punishment and should not seek popularity or publicity either by exceptional severity or undue leniency.

"22. REVIEW.

"In order that a litigant may secure the full benefit of the right of review accorded to him by law, a trial judge should scrupulously grant to the defeated party opportunity to present questions arising upon the trial exactly as they arose, were presented, and decided, by full and fair bill of exceptions or otherwise; any failure in this regard on the part of the judge is peculiarly worthy of condemnation because the wrong done may be irremediable.

"23. LEGISLATION.

"A judge has exceptional opportunity to observe the operation of statutes, especially those relating to practice, and to ascertain whether they tend to impede the just disposi-

tion of controversies; and he may well contribute to the public interest by advising those having authority to remedy defects of procedure, of the result of his observation and experience.

"24. INCONSISTENT OBLIGATIONS.

"He should not accept inconsistent duties; nor incur obligations, pecuniary or otherwise, which will in any way interfere or appear to interfere with his devotion to the expeditious and proper administration of his official functions.

"25. BUSINESS PROMOTIONS AND SOLICITATIONS FOR CHARITY.

"He should avoid giving ground for any reasonable suspicion that he is utilizing the power or prestige of his office to persuade or coerce others to patronize or contribute, either to the success of private business ventures, or to charitable enterprises. He should, therefore, not enter into such private business, or pursue such a course of conduct, as would justify such suspicion, nor use the power of his office or the influence of his name to promote the business interests of others; he should not solicit for charities, nor should he enter into any business relation which, in the normal course of events reasonably to be expected, might bring his personal interest into conflict with the impartial performance of his official duties.

"26. PERSONAL INVESTMENTS AND RELATIONS.

"He should abstain from making personal investments in enterprises which are apt to be involved in litigation in the court; and, after his accession to the Bench, he should not retain such investments previously made, longer than a period sufficient to enable him to dispose of them without serious loss. It is desirable that he should, so far as reason-

ably possible, refrain from all relations which would normally tend to arouse the suspicion that such relations warp or bias his judgment, or prevent his impartial attitude of mind in the administration of his judicial duties.

"He should not utilize information, coming to him in a judicial capacity, for the purposes of speculation; and it detracts from the public confidence in his integrity and the soundness of his judicial judgment for him at any time to become a speculative investor upon the hazard of a margin.

"27. EXECUTORSHIPS AND TRUSTEESHIPS.

"While a judge is not disqualified from holding executorships or trusteeships, he should not accept or continue to hold any fiduciary or other position if the holding of it would interfere or seem to interfere with the proper performance of his judicial duties, or if the business interests of those represented require investments in enterprises that are apt to come before him judicially, or to be involved in questions of law to be determined by him.

"28. PARTISAN POLITICS.

"While entitled to entertain his personal views of political questions, and while not required to surrender his rights or opinions as a citizen, it is inevitable that suspicion of being warped by political bias will attach to a judge who becomes the active promoter of the interests of one political party as against another. He should avoid making political speeches, making or soliciting payment of assessments or contributions to party funds, the public endorsement of candidates for political office and participation in party conventions.

"29. SELF-INTEREST.

"He should abstain from performing or taking part in any judicial act in which his personal interests are involved.

If he has personal litigation in the court of which he is judge, he need not resign his judgeship on that account, but he should, of course, refrain from any judicial act in such a controversy.

"30. CANDIDACY FOR OFFICE.

"A candidate for judicial position should not make or suffer others to make for him, promises of conduct in office which appeal to the cupidity or prejudice of the appointing or electing power; he should not announce in advance his conclusions of law on disputed issues to secure class support, and he should do nothing while a candidate to create the impression that if chosen, he will administer his office with bias, partiality or improper discrimination.

"While holding judicial office he should decline nomination to any other place which might reasonably tend to create a suspicion or criticism that the proper performance of his judicial duties is prejudiced or prevented thereby.

"If a judge become a candidate for any office, he should refrain from all conduct which might tend to arouse reasonable suspicion that he is using the power or prestige of his judicial position to promote his candidacy or the success of his party.

"He should not permit others to do anything in behalf of his candidacy which would reasonably lead to such suspicion.

"PRIVATE LAW PRACTICE.

"In many states the practice of law by one holding judicial position is forbidden. In superior courts of general jurisdiction, it should never be permitted. In inferior courts in some States, it is permitted because the county or municipality is not able to pay adequate living compensation for a competent judge. In such cases one who practices

law is in a position of great delicacy and must be scrupulously·careful to avoid conduct in his practice whereby he utilizes or seems to utilize his judicial position to further his professional success.

"He should not practise in the court in which he is a judge, even when presided over by another judge, or appear therein for himself in any controversy,

"If forbidden to practise law, he should refrain from accepting any professional employment while in office.

"He may properly act as arbitrator or lecture upon or instruct in law, or write upon the subject, and accept compensation therefor, if such course does not interfere with the due performance of his judicial duties, and is not forbidden by some positive provision of law.

"32.  GIFTS AND FAVORS.

"He should not accept any presents or favors from litigants, or from lawyeers practicing before him or from others whose interests are likely to be submitted to him for judgment.

"33.  SOCIAL RELATIONS.

"It is not necessary to the proper performance of judicial duty that a judge should live in retirement or seclusion; it is desirable that, so far as reasonable attention to the completion of his work will permit, he continue to mingle in social intercourse, and that he should not discontinue his interest in or appearance at meetings of members of the Bar. He should, however, in pending or prospective litigation before him be particularly careful to avoid such action as may reasonably tend to awaken the suspicion that his social or business relations or friendships, constitute an element in influencing his judicial conduct.

"34.  A Summary of Judicial Obligation.

"In every particular his conduct should be above reproach. He should be conscientious, studious, thorough, courteous, patient, punctual, just, impartial, fearless of public clamor, regardless of public praise, and indifferent to private political or partisan influences; he should administer justice according to law, and deal wtih his appointments as a public trust; he should not allow other affairs or his private interests to interfere with the prompt and proper performance of his judicial duties, nor should he administer the office for the purpose of advancing his personal ambitions or increasing his popularity."

## Paragraph Two

It is further ordered that Rule 1 of the Rules of the Supreme Court of Florida relating to admission of attorneys, as heretofore amended to become effective July 1, 1936, be and the same is hereby supplemented and added to, so as to provide and require that all students of the law shall be required to study and be examined upon the "Canons of Professional Ethics" heretofore adopted and promulgated by this Court and that this additional requirement shall be effective as of January 1, 1937, as to the said prescribed course of study and examination.

## Paragraph Three

It is further ordered that the Oath of Attorney provided by Section 4190 C. G. L. (Section 12 of Chapter 10175, Acts 1925) to be administered to persons admitted to practice law in this State shall be administered in the form of the special "Oath of Admission" hereinbefore set forth in Canon 46 of the Canons of Professional Ethics and that

536

this requirement as to the form of such oath shall take effect January 1, 1937.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD and DAVIS, J. J., concur.