In the case of In re Stoller, Fla., 36 So.2d 443 and In re Hurtenbach, 157 Fla. 871, 27 So.2d 348, this Court committed itself to the doctrine that reinstatement of a disbarred attorney is dependent on rehabilitation. The record shows that petitioner has for three years last past, made a consistent effort to rehabilitate himself. He now seeks restoration to his status as a lawyer on the good reputation he made during that period.
There are elements in this case not present in other reinstatement cases which we have adjudicated, that I think appropriate to detail. It is not charged that petitioner ever violated the confidence of the court or abused a trust imposed in him by a client. It is shown on the other hand, that prior to disbarment, his professional conduct was in keeping with approved ethical standards. Conviction for violating the Mann Act, 18 U.S.C.A. §§ 2421-2424, was the predicate for petitioner's disbarment. It appears that a certain night club in Miami brought some prostitutes from Tennessee for the purpose of enlarging its entertainment agenda. It is clear that petitioner did not physically transport the prostitutes to Miami, but it is shown that he met them at the portal and paid their transportation charges. It is not clear whether he represented the night club or the prostitutes, or whether he represented either, but it is quite evident that the prostitutes were for the exploitation of the night club patrons rather than the petitioner. In view of this state of facts, it may be that he was something in the nature of a prostitute broker instead of a violator of the Mann Act, but after all doubts and presumptions in his favor are washed out, the reasonable deduction from the evidence is that he was an abetter to the violation of a Federal law, engaged in a nasty business that no lawyer can undertake without violating the good character that his friends vouchsafed for him in order that he might be admitted to practice law.
But despite his departure from approved moral conduct, the ultimate question here is whether or not petitioner's showing of rehabilitation entitles him to forgiveness and another chance. If he were applying for admission to the bar initially, his application would no doubt be rejected. The answer to the question is not found in the law but in Christian Ethics. Christ gave Peter the answer in Matthew 18: 15-22, wherein he was confronted with a question very similar to the one we have here. His answer was an imperative to forgive his brother's sin, not seven times, but seventy times seven times if need be. Christ did not stop when he prescribed the pattern, he exemplified it many times. So far as I know, this is the only authoritative forgiveness pattern that citizens of a Christian democracy, like ours, can follow with assurance. Measured by it, I see no limit to the times or the causes for which I may forgive an erring brother. I do not know how long my wellspring of tolerance will hold out, but I indulge it here in the belief that petitioner will not subject it to another test.
I cannot refrain from reminding him and all lawyers, that the bar is called to a highly responsible purpose, one that is clothed with an equally responsible public trust. I know of nothing in which the public is more vitally interested than the administration of justice. When justice is mute, nothing in our political fabric is important. Members of the bar are officers of the court whose primary function is the administration of justice. Its administration will rise in public esteem in proportion to the standard of professional integrity that the bar imposes on itself. As a profession we have fallen into the habit of attaching too little importance to the place of the lawyer in our constitutional structure, including the social aspect of the profession. The fate of the litigant's life, his property and his welfare, the stability and good character of courts, the very life and perpetuity of our democratic theory, rests in his keeping. Clothed with such a responsibility, certainly every lawyer should enter the profession with a personal urge to build up a reservoir of public confidence in it, yet I am sometimes made to wonder in what category the organized bar would be found if a poll were taken to determine whether lawyers, *Page 548 
preachers, doctors, teachers or what not, ranked the highest in public confidence. Such a poll could of course have no reference to the hundreds of lawyers who individually enjoy the full need of public confidence.
No code of ethics was ever devised that pretended to particularize every step in a lawyer's conduct throughout a varied professional life. To do this would be difficult, for so many complex situations arise that it would not be possible to contemplate all of them. The voice inside him is the only code on which he can rely to meet every emergency. It does not require a labored exegesis to demonstrate that there are some moral absolutes that the lawyer cannot flaunt, if he will not voluntarily conform his conduct to the ethics of the profession,125 Fla. 501, the public may demand his disbarment.
I concur in the opinion of Mr. Justice HOBSON.