UNITED STATES SAVINGS BANK, A CORPORATION, *Appellant,* v. H. M. PITTMAN, *et ux et al., Appellees.*

Opinion Filed March 11, 1920.

1. The relation of attorney and client is a relation of the highest confidential character, and if at any time in the course of litigation, the interests of the attorney in a suit become adverse or hostile to his client, he should cease to represent his client and give due notice of his withdrawal in order that his client may secure other counsel.

2. A client has a right to terminate the relationship between himself and his attorney at his election, with or without cause, the existence or non-existence of valid cause for the discharge of the attorney bearing only on his right to compensation. The right of a client to change his attorney at

will is based on necessity in view of both the delicate and confidential relation between them and of the evil engendered by friction and distrust.

3.  Ordinarily, in foreclosure proceedings in this State, attorneys where the mortgage provides for attorney's fees, accept the sum allowed by the court as their fee, but such fees are allowed the mortgagee and not the attorney. Such fee is intended as an indemnity to the mortgagee for expenditures necessarily made to protect his interests. Where an attorney performs services for which there is no agreement as to his fee, he will be entitled to recover *quantum meruit.*

4.  Where an attorney is employed to foreclose a mortgage and there is settlement of the suit, carried on through and by the advice and with the consent of such attorney, by an acceptance of a deed to the mortgaged property, this is a satisfaction of the mortgage and the attorney can not proceed with the suit for the purpose of collecting his fees and have such fees allowed by the court without at least divulging to the court the facts and giving his client an opportunity to contest suit fees.

5.  If an attorney after there has been developed an adverse interest to his client proceeds with the cause and obtains decrees adverse to the interest of the client and there is an appeal to the Supreme Court, and other costs, rendered necessary by such action of the attorney, a court of equity will tax such costs, including a reasonable attorney's fee, against such attorney.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Decree reversed.

*Raymond M. Hudson,* of Washington, D. C., and *Stephen E. Foster,* for Appellant.

*John W. Bull,* for Appellees.

## STATEMENT.

On October 25th, 1917, the appellant, hereinafter referred to as the complainant, by its solicitor, John W. Bull, an attorney at law, of Tampa, filed its bill in the Circuit Court of Hillsborough County, against H .M. Pittman and wife, for the foreclosure of a mortgage made and executed by Pittman and wife in favor of L. J. Cooper, and which had been assigned by Cooper to the complainant.

Complainant is a corporation, organized and existing under and by virtue of the laws of West Virginia and its sole place of business is Washington, D. C. It appears from the record that L. J. Cooper was indebted to complainant and had pledged the note and mortgage given to secure the notes as collateral for a loan made by complainant to L. J. Cooper. There were two notes, one for $5,000.00 and one for $2,000.00, each dated April 12, 1914, payable six months after date and providing for the payment of interest at 8% per annum and for attorneys' fees of 10% if collection was made through an attorney. The mortgage given to secure the notes provided for a reasonable attorneys' fee, in the event of a foreclosure.

The notes and mortgages above mentioned were, as above stated, pledged by L. J. Cooper to the complainant as collateral for a loan made by complainant to Cooper, amounting to $3,400.00, and Pittman not paying the interest and being in default, the complainant wrote to John W. Bull, an attorney at law, of Tampa, on July 24, 1917, advising Mr. Bull that Pittman was in default and enquiring of Mr. Bull as to the value of the house or property described in the mortgage and requesting to be advised as to the value of the mortgaged property and how long it would take to "dispossess" Mr. Pittman.

It appears from the correspondence between the complainant and Mr. Bull that complainant was of the opinion that Mr. Pittman could be dispossessed in some manner and the complainant be given possession of the property. Mr. Bull advised the complainant by letter dated August 2nd, 1917, to the effect that Pittman could not be compelled to vacate the house, or mortgaged premises, except by foreclosure proceedings, and also, according to complainant's statement to Bull, that complainant was not the owner of the notes and mortgage, but held the notes only, and that L. J. Cooper was the real owner of the mortgage. To this the complainant replied that Mr. Bull's conclusions were correct and that the notes were held as collateral to a note given by L. J. Cooper, and stated that the amount due to it was only $3,400.00.

At the suggestion of Mr. Bull, a proper assignment of the mortgage was secured from L. J. Cooper and Mr. Bull advised complainant by letter dated August 16, 1917, that he would begin foreclosure proceedings promptly on receipt of the proper assignment and transfer of the notes and mortgage. On September 7, 1917, the complainant transmitted the notes, mortgage and assignment to Bull, and in its letter of that date stated "we would like for you to take immediate steps to get possession of this house and advise us of the progress made."

On September 10, Mr. Bull replied to the above letter and stated: "You seem to misunderstand as to my being able to get possession of the house for you, which is now occupied by Mr. Pittman. I attempted to explain in a former letter that the only way in which we can do this is by foreclosing the mortgage," and he also requested that the original notes and mortgage be sent him and suggests that Pittman "might be willing to give a deed con-

veying the property to complainant rather than to risk the chance of a deficiency decree, but if he does not do this and surrender possession of the house, the only thing to do is to file suit to foreclose the mortgage."

The complainant sent the notes and mortgage to Bull at the same time sent a remittance of $10.00 to cover advance costs in the foreclosure proceedings.

On September 20, 1917, after receipt of the notes and mortgage and assignment, Mr. Bull wrote the complainants, stating "I think the amount of the mortgage is all the property is worth, but a deficiency decree against Pittman would not be worth anything. There is no need of going to the expense of foreclosure in this unless we are sure of obtaining a decree." In the same letter Bull states that "Mr. Pittman is in a bad way financially and intimated unless he can make some satisfactory arrangement with Cooper he may give you a deed to the property rather than let you foreclose, if this be satisfactory to you."

In reply to this complainant on September 24, 1917, replied: "If Mr. Pittman will give us a deed, why certainly that would be better than going through the form of a foreclosure, if he is insolvent."

On October 9th, 1917, the complainant, not hearing from Mr. Bull, again called attention to the fact that it would prefer securing a deed from Pittman rather than go through the form of a foreclosure. On October 13th, Bull replied to this statement that he had advised Pittman that foreclosure proceedings would be instituted, and again on October 30, the complainant wrote Bull that they desired him to double his energy and get Pittman out of the house at the earliest possible moment.

On October 27th, 1917, a few days after the bill was filed, it appears that Pittman sent a telegram to complainant, reading as follows: "Do you want to stop suit or stand investigation," and to this complainants a few days later answered also by wire, "Execute deed immediately, or we will secure judgment for difference."

On November 2nd, Bull, by letter, acknowledges receipt of a letter from the complainant, in which he advises complainant that he will immediately prepare a petition for the appointment of a receiver to take charge of the house and lease it if possible during foreclosure proceedings upon the ground that the premises will not sell for only about half of the amount necessary to take care of the mortgage indebtedness."

The application for a receiver was made and by order of the court the petition was made a part of the bill of complaint as an amendment to the bill. This petition was sworn to by Mr. Bull, and recites that "said premises will not sell at forced sale for a sum sufficient to pay the amount of the indebtedness secured by the mortgage, together with interest, attorneys' fees and costs." The application for a receiver was denied by the Circuit Judge, and on November 17, 1917, Bull advised complainant of his failure to secure the appointment of a receiver and stated that Mr. Pittman's attorney "is going to advise Mr. Pittman to give you a deed to the property rather than for a deficiency decree to be entered."

In his letter of November 28, 1917, advising complainant of the failure to secure the appointment of a receiver, Bull says: "You state in one of your letters that all that was actually due you on the notes of L. J. Cooper, which was secured by this mortgage as collateral is about $3,-400.00. I am hoping to be able to sell this property for

you for enough to cover the amount actually due you and all costs, insurance, attorneys' fees, and will appreciate it if you will let me know as soon as possible the exact amount which you must realize on this property so as to save yourself any loss. I take it for granted that you do not want the property on your hands, even if you have to lose a little, but I wish to assure you, judging from the way property is selling down here at present, at forced sale, this place will not bring much more than its *actual* value.'

To this complainant replied on November 30th and say that the balance due on the notes is $3,400.00, but we want all we can get out of the house and do not want it sold at a sacrifice at all. "Hope you can get Pittman out of the house in the next few days or get a deficiency judgment against him. Please advise us of the date of the sale of this house."

On December 3rd, 1917, the defendants, Pittman and wife, filed a demurrer to the bill.

On December 10, 1917, Bull wired the complainant the following message: "Pittman will give deed immediately provided you lease him house by month at forty dollars, payable advance, wire." The same day complainant wired Bull as follows: "You will likely have to make Pittman vacate in thirty days for non-payment and therefore make lease monthly, only cash in advance, and charge prevailing price. Use your best judgment about the price."

On January 18th, 1918, the complainant wrote Mr. Bull requesting to be advised of the situation, and stating that it did not want to delay with Pittman. However, on January 17th, 1918, Bull wrote complainant a letter in which he states: "I have at last secured the key to the Pittman

house and he and his wife moved out completely, I have also today received from his attorney, Craig Phillips, a quit claim deed to the property conveying the same to your bank. The place is in our possession for whatever disposition we wish, and I await your further instructions in the matter. Of course, my services as your attorney have really been performed, and I have conducted the foreclosure proceedings from the beginning, and I have obtained from Mr. Pittman the settlement which you agreed to accept. This, of course, means that foreclosure proceedings against him are to be dismissed, and you are to execute a satisfaction of mortgage. In as much as Mr. Pittman had accepted your proposition before I had to go to the trouble of taking testimony and selling property, I shall charge you a fee of only $650.00, and upon receipt of your check for same, I will file your quit claim deed for record." He also says in his letter, if the actual indebtedness of L. J. Cooper to you which is secured by the mortgage is only $3,400.00 you are getting a place worth, in normal times, about $5,500.00.

On January 27th the complainant replied to this letter and noting that Bull wanted a fee of $650.00, stated "which we think is outrageous and wholly unreasonable, and we therefore decline to pay the same." So far as the value of the house is concerned that should have nothing to do with your claim, as our claim was only $3,400.00, but if we are not mistaken you said some time ago that the house would only bring about what your claim was, but your figures have suddenly jumped up to $7,412.00.

On February 1st, 1918, there was entered in the case an order overruling the demurrer filed in December and entering a decree *pro confesso,* the solicitor for the defendants, Pittman and wife, consenting that a decree *pro con-*

*fesso* be entered against them provided no deficiency decree be entered against them, and also admitting that they did not desire to plead further in the case.

This decree *pro confesso* was followed by an order made the same day, appointing a Special Master to take and report the testimony. On the same day, that is on February 1st, 1918, the complainant's solicitor, Bull, although having in his possession a quit claim deed from the defendants, Pittman and wife, and having the key to the house, and as he states in his letter of the 17th of January, 1918, "the place is in our possession," produced before the original notes and mortgage and the assignment thereof and made proof of the full amount of the notes and interest thereon a total of $7,561.05, and caused two attorneys of Tampa, Florida, to be sworn and testify as to a reasonable attorney's fee in the proceeding.

The complainant's attorney, Bull, was not sworn in this proceeding, but made what the Special Master states in his report, a statement. In this so-called statement appears the following: "There is due on said notes, together with principal and interest at the present time, the sum of $7,561.05, and no part of said sum has been paid since the notes were placed with me for collection." In this Mr. Bull was mistaken, as the debt had been extinguished by the quit claim deed and surrender of the premises to the possession of complainants, according to the letter of Mr. Bull of January 17, 1918.

The attorneys called by complainant's solicitor to testify as to attorney's fees were told by Bull in his statement of the case and by questions propounded, of all that he had done in the case as to filing the bill, the petition for a reeciver, the overruling of the demurrer, the atten-

tion to the payment of insurance and taxes paid by the complainant and of the consent decree *pro confesso*.

The attorneys so testifying under the facts revealed to them testified that a reasonable fee of ten per cent would be a proper fee; that is to say, they testified that $750.00 would be a reasonable fee in the case as stated to them.

The Master's report was filed February 2nd, 1918, and on the same day the Master's report was submitted to the Circuit Judge, who immediately rendered a final decree of foreclosure, finding the equities with the complainant and awarding the complainant the sum of $7,561.05, as due for principal and interest and allowing $750.00, as a reasonable attorney's fee for complainant's solicitor and ordering Pittman to pay the same with costs within one day from the date of the decree and providing for the usual sale of the property in case of default and after due publication of the notice of sale. It also appears from the record that Bull caused the sale advertisement to be inserted in a Tampa paper on February 2nd, 1918, and by said sale notice the property was to be sold on March 4th, 1918.

On February 2nd Bull wrote complainants and notified them of the final decree he had procured that day and sent a copy of the decree with his letter and reaffirming his claim for his fee and stating that he had a lien upon the property so advertised for sale. In this letter he also stated: "Under your directions I accepted this deed upon the agreement with Mr. Pittman to deliver him a satisfaction of mortgage. This deed has never been recorded because you have never sent me the satisfaction which I mailed you. I did not write you as soon as Pittman moved out of the house because I was waiting to get the deed from him, which he had some trouble in getting his wife to sign."

On February 6th, 1918, the complainant enclosed to Bull the instrument which he had sent them on January 17th, showing a satisfaction of the Pittman mortgage. In referring to this satisfaction of mortgage, we will say that on March 12th, 1918, there was filed and made a part of the record of the case an affidavit of Pittman in which he states that on or about the 16th day of January, 1918, he caused to be delivered to John W. Bull, solicitor for the complainant, a quit claim deed to the property described in the mortgage and to be delivered to complainant by the said John W. Bull, or recorded solely upon the condition that the complainant should dismiss the foreclosure proceedings and satisfy said mortgage of record.

On March 1st, 1918, the complainant moved the court to enter an order striking out John W. Bull, Esquire, as solicitor and attorney for the said complainant in this cause and alleges that the act of Mr. Bull in having the cause referred to a Special Master and taking the testimony and in havivng the report of the Master confirmed and procuring a final decree was unwarranted, unauthorized, illegal and unlawful and against the wishes and desires of the complainant, as the said John W. Bull well knew, and put this defendant in the position of being liable to the said Pittman and wife for violation of the agreement with them should the court hold that such action of the said John W. Bull binds this complainant so far as the said H. M. Pittman is concerned.

"That the said John W. Bull violated his duty as solicitor and attorney for a client by such action. That said John W. Bull when he proved the said mortgage and notes before the Special Master on February 2nd, 1918, knew that the statement he then made before the Commis-

sioner (Special Master) on which the Commissioner based his findings was and is false, because he then had in his possession a deed from H. M. Pittman to complainant to certain property in full satisfaction of said mortgage and he had himself given the said H. M. Pittman a letter to that effect and which was binding on the complainant and the said John W. Bull has in his possession the satisfaction of the mortgage which should have been delivered to the said H. M. Pittman.

That the said John W. Bull when called upon today by the duly authorized attorney for the complainant to deliver up the deed, said deed from the said Pittman to the complainant, refused to do so, though he at first stated on such demand that he would deliver up the satisfaction of mortgage, but immediately changed his mind and refused to give up either the said deed or the said satisfaction of mortgage, stating that he had a lien on them for his attorney's fees.

At the same time the complainant, who was represented in these motions by an attorney of Washington, D. C., who was in Tampa endeavoring to get matters settled, filed a motion to vacate and set aside the final decree of sale entered February 2nd, 1918. This last motion was with certain affidavits made a part of the motion to strike Mr. Bull from the case as solicitor and attorney for the complainant.

The grounds of the motion to vacate the final decree are as follows: First, because the order was obtained and entered without the consent of the complainant, the said Bull having no authority to act for the complainant at the time and in the manner he did. Secondly, because the matters in controversy had been already settled and compromised, the defendant Pittman having already

## VOL. 80, JUNE TERM, 1920. 435

U. S. Savings Bank v. Pittman et ux et al.—Opinion of Court.

delivered to the complainant or its attorney Bull a deed to the property in question in settlement of the notes involved. Thirdly, because the order of the sale is manifestly unfair to the defendant who had prior to the final order delivered a deed to said property. Fourthly, because it is unfair to complainant to order a sale of this property and the payment of the necessary fees incidental thereto when complainant already has a deed to the property. Fifthly, because the final order of sale was and is manifestly for the purpose of aiding said John W. Bull by questionable methods in exacting and collecting from complainant an excessive and exorbitant fee as complainant already had a deed to the property that was ordered sold as above stated. Sixthly, that complainant had no notice of application for decree of sale or fixing of fee.

WILLS, Circuit Judge (*after stating the facts.*)

It appears from the record in this case that at the time the order was made by the Circuit Judge, overruling the demurrer and allowing a decree *pro confesso* and reference to a master that the object sought by the complainant had been accomplished. A conveyance of the mortgaged premises had been made to it, the deed delivered to complainant's counsel and possession of the mortgaged premises delivered to complainant. The action of Attorney Bull in bringing up the demurrer for settlement was not done in the interests of the complainant, but done by him solely for his interest and for no benefit of his client. He had been advised that his demand for a fee was refused, and it is clear that all steps taken by him on and after February 1st, 1918, were taken by him for his interest and not that of his client.

The relation of attorney and client is a relation of the highest confidential character, and if at any time in the course of litigation, the interests of the attorney in a suit become adverse or hostile to his client, he should cease to represent his client and give due notice of his withdrawal in order that his client may secure other counsel.

It is apparent that the entry of the final decree was solely for the purpose of attempting to collect a fee for the benefit of Solicitor Bull. The record shows that there was a dispute between the complainant and its then solicitor as to the amount and reasonableness of the fee to be paid Bull for the services he had rendered.

An attorney is entitled to compensation for services rendered, and in proper proceedings may enforce the collection of such compensation. An attorney employed at a fixed fee to perform certain services cannot be deprived of his compensation by his client preventing the performance of such services by settlement. Where an attorney performs services for which there is no agreement as to his fee, he will be entitled to recover *quantum meruit*. 2 R. C. L. 1046.

Ordinarily, in foreclosure proceedings in this State, attorneys where the mortgage provides for attorneys' fees, accept the sum allowed by the court as their fee, but such fees are allowed the mortgagee and not the attorney. Such fee is intended as an indemnity to the mortgagee for expenditures necessarily made to protect his interest. Jones Mortgages, Sec. 359.

The facts in the instant case show clearly to our mind that at the time the final decree of foreclosure was rendered, the mortgage had been settled by the acceptance of a deed conveying the mortgaged premises to the com-

plainant and possession taken thereof by the attorney for his client, and his co-defendant, the mortgagor was or had been attempting to rent the premises. It is true that it is contended that the deed was only taken and held in the nature of an escrow, and this is attempted to be substantiated by the affidavit of Pittman, until the cancellaion of the mortgage had been delivered and which was subsequently delivered to Bull by the complainant.

If the facts establish this contention, which we do not think they do, then certainly the decree should be set aside for the reason that there was an agreement to accept the deed and that there should be no deficiency decree against the defendant, Pittman, and the foreclosure decree sets out that there shall be no deficiency decree entered thereon and certainly no court of equity will permit a party to receive benefits for which he has given nothing.

The facts disclosed in this record show that at the time the order was entered on the demurrer, there had been a settlement of the case by the giving of the deed to the property in litigation by which the mortgaged premises were conveyed by Pittman and wife to the complainant, and the only condition to be fulfilled was the delivery of the satisfaction of the mortgage. Mr. Bull's contention to the contrary was incorrect. He had been the attorney and agent of complainant and had transacted all the business relative to the litigation. The attorney for the defendant, Pittman, was also aware of these facts, and, in our opinion, the attorney should have made known to the Circuit Judge the facts relative to this deed, and had this been done, the court would not have entered the decree. It was the duty of Bull, when he was advised by his client that it would not pay the fee he demanded, to

have notified his client of his further intentions in the case, so that his client could be heard.   In other words, the action of Bull in procuring a ruling on the demurrer and the agreement to have a foreclosure decree without a deficiency decree and fixing the amount of his fee, was, so far as his client was concerned, against the wishes of his client and adverse to the interests of his client.   He should have notified his client of his adverse views before proceeding further and given his client an opportunity to secure counsel and be represented in the further progress of the case, especially as to the question of fees to be allowed himself.   He should not have placed himself in the position of representing his client, while, in reality, he was representing only his own demand and not that of his client.

While we do not agree with the views of the complainant as to the amount of the fee to be allowed Bull, and we believe that on this feature of the case the complainant has an entirely wrong view of the case, we think that the conduct of Bull in procuring the reference to the Special Master and the entry of the foreclosure decree, was under the circumstances an improper proceeding, and that when this was called to the attention of the Circuit Court, the same should have been vacated and set aside.

We are of the opinion that as the complainant had applied to the court for leave to substitute another attorney and to strike Bull from the case as its attorney, this should have been granted.   To this motion the attorney, Mr. Bull, filed a demurrer.   Upon examination of the motion and Bull's demurrer thereto, we hold that this should have been granted, upon terms.   At the time the motion was made to strike Bull from the record as attorney for the complainant it was apparent that there were differ-

ences between the client and attorney to the extent that it was no longer proper that the relationship should continue with justice to either party and the orderly procedure necessary in courts of justice.

The authorities universally recognize the right of a client to terminate the relationship between himself and his attorney at his election, with or without cause, the existence or non-existence of valid cause for the discharge of the attorney, bearing only on his right to compensation. The right of a client to change his attorney at will is based on necessity in view of both of the delicate and confidential relation between them and of the evil engendered by friction and distrust. 2 R. C. L. 927.

In our opinion, the Circuit Court should have granted this motion, and by proper order reserved the right to make an inquiry as to the proper amount to be allowed Bull on a *quantum meruit* for the services he had rendered in the case for the complainant up to the time of receiving the deed to the mortgaged premises and the possession thereof. There was no necessity or reason for the entry of the decree of foreclosure, and it appears to us that the evidence upon which the fee was fixed does not disclose the true facts of the case or of the professional services and skill rendered by Bull in the case.

For the reasons stated, the case should be reversed with directions to the Circuit Court to set aside and vacate the decree *pro confesso* and final decree of foreclosure and for further appropriate proceedings.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and ad-

judged by the court that the decree appealed from be, and is hereby, reversed, and the cause is remanded with directions to set aside and vacate the decree *pro confesso* and final decree of foreclosure and by proper proceedings to ascertain the amount of a reasonable fee to be allowed John W. Bull for the services legitimately, actually and necessarily rendered up to the time of receiving the deed to the mortgaged premises, and also at the same time to ascertain a reasonable fee to the appellant complainant's present attorneys for their services in procuring the vacation of the decree *pro confesso* and final decree of foreclosure wrongfully obtained by John W. Bull, including the representation of the case in this court, as well as all court costs of this proceeding for the vacation of said decree *pro confesso* and final decree of foreclosure, including the costs of this appeal and that the amount of such last mentioned attorneys' fees and said court costs in this proceeding be adjudged against said John W. Bull, and shall be deducted from the amount of the fee found to be due to said Bull for his legitimate services in the original foreclosure case, and upon the payment to said Bull of the balance, if any, that the deed to the premises in question made by the mortgagor to the complainant be delivered by Bull to the complainant, and that he also deliver to the mortgagor the satisfaction of said mortgage, and that the bill of complaint for foreclosure of such mortgage be dismissed. If there is no balance left due to said Bull after making the deductions hereinbefore directed, then he shall at once deliver said deed and satisfaction of mortgage as above directed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.