Inez Stengel GAY, Appellant,

v.

Katherine McCAUGHAN, As Executrix of the Estate of George McCaughan, Deceased, Appellee.

No. 17733.

United States Court of Appeals
Fifth Circuit.

Nov. 24, 1959.

Rehearing Denied Jan. 12, 1960.

Daniel L. Ginsberg, Miami; Fla., for appellant.

John H. Gunn, George C. Bolles, Jr., Miami, Fla., for appellee.

Before RIVES, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This is the second appeal by Mrs. Gay from orders dismissing her suit for damages resulting from the conduct of George McCaughan when acting as her lawyer in Florida State Court litigation. In the first hearing the suit was dismissed for failure to state a cause of ac-

tion. In the present trial the court directed a verdict for the defendant at the close of appellant's proof.

We held in Gay v. Heller, 5 Cir., 252 F.2d 313, that Mrs. Gay's complaint against appellee's decedent stated a cause of action under Florida law for violation of the duty of lawyer to client. On the trial of the case the documentary evidence fully established, absent any countervailing evidence, that this duty was breached as a matter of law. Easily pieced together from the record is this unpleasant picture: Mrs. Gay employed McCaughan on behalf of herself and her uncle to have a *guardianship* established by the *county* court of Dade County for the person of her aged grandmother, Mrs. Stengel. McCaughan obtained her signature to a petition to the Circuit Court for the appointment of a curator. A curator was appointed and McCaughan was appointed attorney for the curator. Under the law then in force in Florida, the Circuit Court had exclusive jurisdiction over curatorship proceedings. The statute gave broad powers to the court in curatorship matters to tax the estate of the ward for costs of the proceedings. The record here shows that the property of Mrs. Stengel in Florida, consisting principally of a furnished house, was liquidated, and after payment of some current bills a net amount of $5300 was left in the hands of the curator. The Circuit Court, on the petition of the curator and McCaughan entered an order allowing a fee of $10,000 in favor of the curator and a fee of $6,000 in favor of McCaughan; the Circuit Court caused this order to be entered in the form of a judgment against Mrs. Gay and her uncle, as well as against the estate; the order directed that the $5300 representing Mrs. Stengel's property in the hands of the curator be divided between the curator and McCaughan and be credited on the two judgments. Subsequently, according to the record, the curator and McCaughan appeared in the Circuit Court without notice or any attempt at service on Mrs.

Gay, and caused that court to rule Mrs. Gay in contempt of court and ordered her to jail for 60 days; the record discloses that Mrs. Gay paid McCaughan a fee of $500 for representing her and her uncle initially; that after he had caused the curator to be appointed she attempted to discharge him, but that he declined to be discharged because she had agreed to pay an additional $500 fee and because he claimed to be entitled to a further allowance of a fee by the court.

Following a collateral attack in the Florida courts by Mrs. Gay the Supreme Court of that state has held that the judgments in favor of the curator and McCaughan and against Mrs. Gay were absolutely void. Gay v. McCaughan, Fla., 105 So.2d 771, 773. Although the Florida court based its decision on the "broader ground" that no such judgment for curator's fees or legal expenses could be entered except as against the estate being administered, the court said as to the commencement of the *curatorship* proceedings, "appellant was not, according to the conceded facts, entitled to initiate these proceedings under the controlling law. Sec. 747.06 F.S.1955 F.S.A."[1]

Thus, the record showed at the time of the direction of the verdict in favor of McCaughan's estate that he had been employed and paid a $500 fee by Mrs. Gay; that he had taken action purportedly in her behalf that the Supreme Court of Florida said was not available to her; *as a result of that action* he obtained employment, before she sought to discharge him, to represent another party, the curator, who immediately became so intensely antagonistic that within thirty days he sought and obtained, with McCaughan's aid, an order committing her to jail for sixty days without a hearing and without notice on a criminal contempt proceedings, and thereafter McCaughan joined with the curator in obtaining $16,000 in judgments against her which were patently void, as has now been held by the state court. It required the bringing of plenary suits in the state

---

1. As granddaughter she was not within the limited class of relatives authorized in the statute to commence such proceedings.

court to have, first, the judgment favoring McCaughan, and, second, the judgment favoring the curator, set aside. By the same decision of the Supreme Court of Florida, the contempt of court conviction was also set aside as void after being outstanding against her for several years.

The trial court's action in directing the verdict was based on the failure of proof of damages by the plaintiff. This is difficult to understand in light of the showing that McCaughan had been paid $500 for his services as attorney. At the very minimum the jury on the record made thus far would be authorized, if not required, to find damages to this extent. Moreover, in the absence of any Florida cases expressly in point, we conclude that the jury could, even without the proof of any damages, measure the loss to plaintiff by reason of the illegal money judgments entered against her and the illegal participation of McCaughan in having Mrs. Gay sentenced to jail for contempt. Such damages partake of the nature of those recognized by the Florida court to be allowable in Kirksey v. Jernigan, Fla., 45 So.2d 188, 17 A.L.R.2d 766, cited with approval in Crane v. Loftin, Fla., 70 So.2d 574. Whether this species of damages be called exemplary damages or damages for mental pain and anguish unconnected with physical injury the test is the same: for there to be such recovery it must be shown that there is an "entire want of care or attention to duty, or great indifference to persons, property, or rights of others." When this is shown, "such malice will be imputed as would justify the assessment of exemplary or punitive damages."

In our opinion the action of the appellant's lawyer, as proved on the plaintiff's case below, in causing the entry of the money judgments under the circumstances outlined, as well as the action in moving for a contempt conviction, would form the basis on which a jury in its discretion could allow damages. Of course, the actual expense involved in causing the void judgments to be set aside would be recoverable under ordinary rules of damages. No proof was adduced as to these amounts on the trial below.

The principal contention of the appellee here is that there was no proof of damages, and thus the trial court correctly directed the verdict. The second contention is that when McCaughan did the acts adverse to Mrs. Gay, he was no longer her lawyer. We think it entirely immaterial whether under the principle announced in United States Savings Bank v. Pittman, 80 Fla. 423, 86 So. 567, Mrs. Gay had effectively discharged McCaughan. The fact remains that her employment of him put him in the position to ask that a curator be appointed and resulted in his being appointed attorney for the curator and as a result of this employment he thereafter, while still at least *de facto* purporting to act for her when he thought it desirable to do so, participated in obtaining illegal judgments against her and caused her to be cited for contempt of court, all in relation to the very guardianship or curatorship for which she had originally sought and obtained his services.

The Florida courts recognize the relationship of attorney and client as being one which forbids such action. The Supreme Court of Florida has stated the relationship thus:

"An attorney, wherever he may be employed, must faithfully, honestly, and consistently represent the interests and rights of those by whom he is engaged. He must discharge his duties with the strictest fidelity and observe the highest and utmost good faith. He cannot use any information garnered from his position for his own or others' benefit, nor may he divulge any such information to others; nor may he represent conflicting interests. Canons of Professional Ethics, Nos. 6, 9 and 10, 125 Fla. 501." Richardson v. State, 141 Fla. 218, 192 So. 876, 877.

The appellant complains of the rulings of the trial court excluding testimony of the witness Heller under the Florida Dead Man's Statute, Section 90.05,

F.S.A.[2] In view of the necessity that the case be remanded for further proceedings, we deem it appropriate to pass on this question.

Appellant complains particularly of the court's refusal to permit counsel to examine Heller as an adverse witness as to certain advice given him by McCaughan and as to McCaughan's participation in the preparation of petitions and orders. The court considered that Heller's testimony, in view of McCaughan's death, would be violative of the Dead Man's Statute. We think there is no Florida case that so broadly construes the statute. Of course, the purpose of the statute is to prevent any person who might directly benefit from such testimony from giving testimony as to transactions with the deceased. There is nothing in this record that would support a holding by the trial court that the adverse witness Heller could conceivably benefit as a result of testimony he was asked to give by the appellant here. Heller's testimony was not excludable by the Dead Man's Statute. The case of Fields v. Fields, 140 Fla. 269, 191 So. 512, far from supporting appellee's position in this regard, seems rather to defeat it. In speaking of the interest that must be had by the witness in order to disqualify him, the Court quotes from Adams v. Board of Trustees, 37 Fla. 266, 20 So. 266, 273, and italicizes the following:

> "It must be present, certain, and vested interest, and not an interest uncertain, remote, or contingent."

2. This section is set out in full below:
"Witnesses; as affected by interest
"No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and

The order of the trial court directing a verdict for the defendant was in error. The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."