**Geneva Ann SINGLETON, Plaintiff-Appellant,**

v.

**Percy FOREMAN, Defendant-Appellee.**

**No. 29195.**

United States Court of Appeals, Fifth Circuit.

Dec. 1, 1970.

Raymond E. LaPorte, Tampa, Fla., for plaintiff-appellant.

William R. Hapner, Jr., Tampa, Fla., for defendant-appellee.

Before TUTTLE, BELL, and GOLD-BERG, Circuit Judges.

GOLDBERG, Circuit Judge:

Once again—it seems to be habitual—we are confronted with a case demonstrating the dangers of rendering a judgment of dismissal on the basis of barebone pleadings. Finding that the plaintiff did plead facts sufficient to state a

claim upon which relief can be granted, we reverse.

We must here review an unseemly and deplorable belligerancy between an attorney, Percy Foreman, and his client, Mrs. Geneva Singleton. The difficulties began in February 1969 when Mrs. Singleton who was apparently experiencing marital difficulties traveled from her home in Tampa, Florida, to Memphis, Tennessee, to consult with the defendant, a Texas attorney. Following consultation Mrs. Singleton retained Mr. Foreman to represent her in a divorce action in the State of Florida. The parties entered into the following contract pertaining to Mr. Foreman's employment:

"This is to make a record of our agreement concerning my employment as your principal attorney to represent you in a divorce action to be filed in the Circuit Court of Hillsborough Co., Florida, within the near future. I am not licensed to practice law in Florida, but I have never been refused permission to try an isolated case there, and I anticipate engaging a licensed lawyer who maintains offices in Tampa and with whom I have previously worked.

"My normal retainer for accepting a case outside Texas, where there is child custody and/or a considerable estate to establish, is $25,000.00. This is not applied to the per diem but is a retainer paid soley [sic] for my agreement to represent the client. My actual fee in your case is to be one-third of the value of any recovery that may be obtained for you, plus a reasonable fee of any alimony and or support payments the Court may grant or allow, such reasonable fee of such installment payments is to be fixed by the Court.

"The one-third of the base recovery in property or money is to be my property absolutely, whether obtained by me or anyone else. That is, should you elect to dispense with my services and engage another lawyer, I am still entitled to receive the one-third of any recovery and a reasonable amount of any payments made after the divorce.

"I agree to pay any local lawyer that I may engage out of the above fee arrangement. But it is anticipated that he and I will apply for an advance for attorneys fees and trial expenses. Any such fees so advanced by order of the Court will apply to our total or over all fee.

"I have made no statement, representation or warranty concerning the outcome of this case. We both know that it is a hard fight. But I have promised to appear at the final trial of this case in person and to try to be present at the first hearing. I will prepare all pleadings and have the final decision on all important matters, subject, of course, to consultation with you when such is possible.

"To secure the payment of my $25,-000.00 retainer, you have given me this date the following jewelry and personal property, to-wit:

| *Description* | *Appraised* |
|---|---|
| 1 – Platinum pin, consisting of 35 diamonds and 36 emeralds total weight diamonds 6½ cts emeralds 7½ cts (J–15) | $ 5,800.00 |
| 1 – Lady's platinum ring (damaged by cutting off finger) with two long baguettes and 2.25 emerald cut diamond, white and clear (J–1) | 3,500.00 |
| 1 – Lady's 18 kt yellow gold, heavy hand-made ring, consisting of 1—22 cts. turquoise and 102 round diamonds (J–14) | 3,200.00 |
| 1 – Lady's platinum bracelet containing 1 emerald cut diamond, 2 kite shaped diamonds, 52 round diamonds (mostly full cuts) and 39 baguettes and tapered baguette diamonds (J–13) | 3,600.00 |
| 1 – Lady's 23 jeweled 14 K white gold Bulova Diamond watch with diamond attachment (J–9) | 1,200.00 |

1 – Lady's large turquoise ring, white gold circled by 20 diamonds (J–8) 400.00

1 – Yellow gold, heavy bracelet with four charms hand made 400.00

1 – Diamond, 14 kt. white gold pin "GS" 150.00

1 – 14 kt yellow gold shrimp on black onyx (J–18) 250.00

1 – Yellow gold wedding band cut in two ____

1 – Twenty Dollar (U. S.) Gold piece made into a locket-charm 100.00

"You will note the total value of the above are less than my stated retainer fee. But, since you have evidenced a willingness to do whatever you could in the way of placing your jewels with me, I agree to hold all the above until the final disposition of your case, including any appeals, and that you shall have all the above personal property returned to you upon payment to me out of your portion of the recovery, in addition to by [sic] one-third fee aforesaid, the total value of each or any of the above items you may care to redeem.

"The above jewels are not a part of the fee provided in the court's advance order or the one-third attorney fee but are to be considered soley [sic] as my separate retainer in the case. It is not contemplated that any local attorney will have any claim on them whatsoever.

"As evidence that the above is our agreement, you will sign the original and two copies of this agreement.

Yours very truly,

/S/ PERCY FOREMAN

"The above is our agreement and I have signed each page of the original and two copies of same. I fully understand it.

/S/ GENEVA A. SINGLETON"

By February 28, 1969, 21 days after their initial meeting and approximately 10 days after the plaintiff's divorce petition was filed in Florida, discord and dissent between the parties had reached such a crescendo that Mrs. Singleton dismissed Mr. Foreman as her attorney. Subsequently Mrs. Singleton brought this suit in a Florida court against Mr. Foreman, alleging the following:

"Plaintiff, GENEVA ANN SINGLETON, sues

Defendant, PERCY FOREMAN, and alleges:

1. This is an action for compensatory and exemplary damages in the sum of two million dollars.

2. That on or about February 7, 1969, the plaintiff, while in a state of despair and confusion due to marital problems and discord, traveled from her residence in Tampa, Florida to Memphis, Tennessee to seek the advice and counsel of the defendant PERCY FOREMAN, concerning her domestic and marital problems.

3. That after a discussion between the plaintiff and defendant, the defendant undertook to represent the plaintiff in a divorce action to be filed in the Circuit Court of Hillsborough County, Florida.

4. That on or about February 10, 1969, the defendant drafted an alleged agreement and secured the signature of the plaintiff to same. That a copy of said alleged agreement is attached hereto as Exhibit A and the contents of Exhibit A are incorporated herein as fully as if set forth herein.

5. That at the time of affixing her signature to said Exhibit A the plaintiff was distraught, confused, apprehensive and was not fully aware of the contents of Exhibit A at the time of affixing her signature.

6. That plaintiff's medical condition, as described in paragraph 5 was due to the actions of the defendant in that the defendant exhorted the plaintiff to be distrustful of everyone including plaintiff's mother, sister and family; that the defendant instructed the plaintiff to keep the purported agreement, Exhibit A, a secret and especially not to men-

tion same to the attorney he planned to associate in the case in Tampa, Florida named James Thompson; that defendant further oppressed the plaintiff and her spirit by requiring the plaintiff to deliver to defendant certain items of jewelry described on page two of Exhibit A attached hereto; that in addition the defendant told plaintiff that he had to have the Jaguar coat that he saw upon the plaintiff although it was then the middle of winter in Memphis, Tennessee; that plaintiff prevailed upon the defendant to allow her to keep the coat since she would then be without any coat with which to keep herself warm while she remained in Memphis or while she was returning to Tampa, Florida; and that defendant then told plaintiff that he would let the plaintiff keep the coat until May, 1969.

7. That the defendant then entered upon a course of abuse and oppression directed toward plaintiff which caused the plaintiff extreme mental pain and suffering; that the defendant cursed the plaintiff, and in some instances the plaintiff's mother in the presence of the plaintiff, with language so vile, scurrilous, and indecent that plaintiff is embarrassed to repeat them in this pleading and to spread said language upon the public records.

8. That defendant's abuse of plaintiff continued until on or about February 28, 1969 when plaintiff advised defendant that she did not want his legal services for any purpose.

9. That on or about February 27, 1969, the plaintiff attempted to discuss a possible out of court settlement of plaintiff's divorce complaint which had been filed by defendant and James Thompson, in plaintiff's name, against her husband, Henry Charles Singleton. Said divorce complaint was filed February 17, 1969 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, being case number 176010.

10. That while attempting to discuss the terms of settlement that plaintiff desired, the defendant exploded into a torrent of abuse, cursing and vile language directed at plaintiff. In the course of said obscenities, the defendant told the plaintiff that she was a 'stupid ......................'; that plaintiff did not 'have any more to say in this case than a chair in the Court room'; and that if plaintiff attempted to obtain the services of another lawyer that, 'I'll ruin you and that ..................... husband of yours.'

11. That the alleged agreement, Exhibit A, was and is offensive to and violative of public policy and is void ab initio.

12. That the plaintiff has requested that defendant return the jewelry itemized in Exhibit A, but defendant has failed and refused to return said jewelry.

13. That in addition to the unwarranted abuse described hereinabove which defendant has directed toward plaintiff, the defendant is also attempting to obtain monies from the plaintiff in excess of one million dollars for purported attorney fees for alleged representation in her above mentioned divorce suit.

14. That the defendant is guilty of professional misconduct as follows:

(a) securing and attempting to enforce the alleged agreement attached as Exhibit A, which is repugnant to the law governing the conduct of members of the legal profession;

(b) in attempting to secure an exorbitant fee, greatly in excess of the reasonable value for services rendered or to be rendered by him for plaintiff;

(c) in the oppression and abuse of the plaintiff as hereinabove described.

15. That plaintiff is entitled to exemplary damages because defendant should be taught that when individuals approach him for aid and services, as plaintiff did, much as one would approach a priest or minister, he should not be allowed to conduct himself in the manner in which he has toward the plaintiff; that defendant's actions apparently follow a similar pattern or modus operandi with other clients, such as his ac-

tions in representing 'Candy' Mossler and James Earl Ray, wherein he has reportedly demanded exorbitant fees and in some instances obtained jewels and property which he has refused to return.

16. That as a proximate result of defendant's conduct and actions the plaintiff has experienced extreme mental suffering to her physical detriment and will continue to so suffer in the future.

WHEREFORE, plaintiff demands a judgment from the defendant for the value of the jewels which defendant has converted to his own use, plus compensatory and punitive damages in the total sum alleged."

Foreman removed the cause from the state court to the United States District Court for the Middle District of Florida, where he then filed a motion to dismiss, asserting that Mrs. Singleton's complaint failed to state a claim upon which relief could be granted. The trial court apparently agreed and granted the motion to dismiss after Mrs. Singleton declined to amend her pleadings.

■ The central issue in this case, therefore, is whether the trial court was in error in dismissing the action on the pleadings. We are moved to note at the onset that dismissal at such an early stage is not looked upon favorably. Barnes v. Merritt, 5 Cir. 1967, 376 F.2d 8, n. 6. Chief Judge Brown has characterized such a procedure as both a "precarious one with a high mortality rate," Barber v. Motor Vessel "Blue Cat," 5 Cir. 1967, 372 F.2d 626, 627, and "a tortuous thing," Arthur H. Richland Co. v. Harper, 5 Cir. 1962, 302 F.2d 324. Though our opinions are replete with homilies and entreaties not to deal cavalierly with cases in this manner, they, like much of scripture, have too often gone unheeded.[1] The rule is clear and often repeated—a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff

would be entitled to no relief under any state of facts which could be proved in support of his claim. Barnes v. Merritt, *supra*; Arthur H. Richland Co. v. Harper, *supra*; 2A J. Moore, Federal Practice ¶ 12.08 (1968). Stated another way, on a motion to dismiss on the pleadings the court must assume that all of the allegations of the complaint are true in order to determine whether a cognizable claim is stated. Gardner v. Toilet Goods Association, Inc., 1967, 387 U.S. 167, 87 S.Ct. 1526, 18 L.Ed.2d 704. Sitting as diversity court in the State of Florida we must apply this federal standard to determine whether under the substantive law which a Florida court would apply Mrs. Singleton has stated a claim upon which relief can be granted. Evaluating Mrs. Singleton's complaint according to these standards, we think she has stated claims, both in contract and in tort for which a Florida court could grant relief.

### The Applicable Law

■ At the outset we are faced with a conflicts problem because the contract between Mrs. Singleton and Mr. Foreman was apparently made in Tennessee, but was to be performed in Florida. Since we are sitting as a Florida court we must look to the conflicts rule of the State of Florida to determine whether the law of Florida or the law of Tennessee should in this instance be applied. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Unfortunately, however, the relevant Florida conflicts rule is not entirely clear.

■ At one time Florida apparently followed the rule that matters concerning the validity and interpretation of contracts were governed by the lex loci contractus, Walling v. Christian & Craft Grocery, 1899, 41 Fla. 479, 27 So. 46. Later cases indicate, however, that the Florida courts subsequently moved to a more flexible position and followed the

---

1. For a list of the evergrowing number of cases where the trial judge disregarded the caution we have so often tried to instill, see Millet v. Godchaux Sugars, Inc., 5 Cir. 1967, 241 F.2d 264, n. 1, and Barber v. The Motor Vessel "Blue Cat," 5 Cir. 1967, 372 F.2d 626, n. 1.

rule that the nature, validity, and interpretation of contracts are to be governed by the place where the contract is made *or* the place where the contract is to be performed. Brown v. Case, 1920, 80 Fla. 703, 86 So. 684; Connor v. Elliott, 1920, 79 Fla. 513, 85 So. 164; Fincher Motors, Inc. v. Northwestern Bank & Trust Co., Fla.App.1964, 166 So.2d 717. We have discovered no case where the Florida authorities have discussed the appropriate law to be applied when, as here, the place of making and the place of performance are not the same. Consequently, we must attempt to guess which law the Florida court would apply in this situation.[2] We conclude that the Florida courts, in a case where the place of making differs from the place of performance would choose between the two according to which place had the more significant relationship to the contract. Applying that test to the instant case, we find that Florida, the place of performance, has the more significant relationship to the contract. The Tennessee contracts, arising solely from the transitory presence of the parties, were insignificant and entirely fortuitous. All that was to follow from the contract was performable in Florida since the contract dealt with a divorce and property settlement to be obtained in Florida. It concerned sensitive domestic relations matters peculiarly within Florida's domain. We have no doubt that in such a situation a Florida court would choose to apply Florida law. We therefore will do the same.

### Claims Stated

 It is immediately apparent to us that at the very least Mrs. Singleton's complaint states a cognizable claim for a return of the retainer paid to Mr. Foreman. The contract provided for a retainer and a contingent fee out of the proceeds from the divorce settlement. Contracts for a contingent fee in divorce cases are void and unenforceable under Florida law. Salter v. St. Jean, Fla.App. 1964, 170 So.2d 94; Sobieski v. Maresco, Fla.Ct.App.1962, 143 So.2d 62. Although Florida follows the general rule that courts will not aid either party to an illegal contract but will leave them where they place themselves, Florida also recognizes an exception to this rule when "law or public policy requires action by the courts, or where the parties are not in pari delicto." Stewart v. Sterns and Culver Lumber Co., 1908, 56 Fla. 570, 48 So. 19, 25. Since on the pleadings Mrs. Singleton can in no manner be considered in pari delicto with Mr. Foreman, we think the courts of Florida would go to her aid to the extent of returning the consideration which she tendered in performance of her part of the invalid contract. Restatement of Contracts § 604 (1932).

 Foreman, however, contends that even if the contract is invalid as to the contingent fee, the retainer should be allowed to stand since the contract is divisible. We do not agree. Florida law provides that "a contract should be treated as entire when, by a consideration of its terms, nature, and purpose, each and all of its parts appear to be interdependent and common to one another and to the consideration." Local No. 234 of United Association of Journeymen and Apprentices of Plumbing and Pipefitting Industry of United States and Canada v. Henley and Beckwith, Inc., Fla.1953, 66 So.2d 818, 821. Similarly, "a contract is indivisible where the entire fulfillment of the contract is contemplated by the parties as the basis of the arrangement." *Id.* at 821. Judged by this standard, we think the contract here was clearly non-divisible. The retainer and contingent fee were related to the sole object of employment, the divorce. The parties did not contemplate a piece work relationship. We think it obvious that Mr. Foreman did not agree and

---

2. It may be that because Tennessee has absolutely no interest in having its law applied that the instant problem is more properly characterized as a "false conflict." See Lester v. Aetna Life Insurance Co., 5 Cir. 1970, 433 F.2d 884. We do not decide this question since under either approach Florida law would apply.

would not have agreed to handle the divorce for the retainer alone. With the illegal portion of the contract excised, the greater portion of the consideration was eliminated. It is impossible to think that a portion of the contract with this much significance could be entirely "eliminated from the contract and still leave a valid working arrangement fairly reflecting the original mutual understanding between the parties." Local No. 234 v. Henley and Beckwith, Inc., *supra,* at 822. The contract is thus not subject to divisible quantification. The retainer and the contingent fee both related to the whole obligation. We conclude, therefore, that the invalid contingent fee made the entire contract void and unenforceable.

Furthermore, even if the retainer could be considered a separate part of a divisible contract, we think Mr. Foreman would still be required to return the retainer since, if the allegations are supported by fact, he clearly breached the entire contract. Implicit in every attorney-client contract is a covenant by the attorney that he will conduct himself according to customary professional standards. In Florida, as elsewhere, the attorney-client relationship is regarded as demanding an extremely high standard of conduct. Gerlach v. Donnelly, Fla.1958, 98 So.2d 493. The attorney is under a duty to represent his client with the "utmost degree of honesty, forthrightness, loyalty and fidelity." Smyrna Developers, Inc. v. Bornstein, Fla.App.1965, 177 So.2d 16, 18. He must resign if at any time in the course of litigation his interest in the suit becomes "adverse or hostile to his client," United States Savings Bank v. Pittman, 1920, 80 Fla. 423, 86 So. 567, 572. Hostility or adverse positions need not always be of an economic character. Indeed, custom requires that the attorney treat his clients with civility, common decency, and loyalty, both as to legal problems and as to their personal relationships.

Moreover, it is clear that an attorney never has the right to prohibit his client from settling an action in good faith. Sentco v. McCulloh, Fla.1955, 84 So.2d 498; Florida Bar Rules, Canon No. 7. A client by virtue of a contract with his attorney is not made an indentured servant, a puppet on counsel's string, nor a chair in the courtroom. Counsel should advise, analyze, argue, and recommend, but his role is not that of an imperator whose edicts must prevail over the client's desire. He has no authoritarian settlement thwarting rights by virtue of his employment. This is particularly true where, as here, the client's lawsuit is one for divorce, for public policy favors reconciliation.

Judging Mr. Foreman's conduct according to these rules, and assuming, as we must, that the allegations in the complaint are true, we think it quite clear that he breached the most fundamental aspects of the confidential relationship with Mrs. Singleton. The complaint alleges that when she indicated a desire to settle her divorce action, Mr. Foreman "exploded into a torrent of abuse," refused to allow her to settle, and threatened to ruin both Mrs. Singleton and her husband. He thus allowed himself to be in economic and personal hostility to his client and at this point was under a legal duty to withdraw from the case. United States Savings Bank v. Pittman, *supra.* Instead, Mr. Foreman, it is alleged, threatened to ruin his client and her husband if they obtained the services of different counsel.

Such irresponsible and reprehensible conduct on the part of an attorney, if factually established, would give the client an absolute right to fire the attorney with cause, thereby terminating any rights which he may have under the contract of employment. Goodkind v. Wolkowsky, 1938, 132 Fla. 63, 180 So. 538, aff'd 147 Fla. 415, 2 So.2d 723, reaff'd 151 Fla. 62, 9 So.2d 553. Rosenkrantz v. Hall, Fla.Ct.App.1964, 161 So. 2d 673. Further, it is settled Florida law that when one party to a contract unjustifiably refuses to perform a substantial part of his duty under the con-

tract, the other party has the right to rescind the contract and recover what he has paid pursuant to the agreement. Savage v. Horne, 1947, 159 Fla. 301, 31 So.2d 477; Givens v. Vaughn-Griffin Packing Co., 1941, 146 Fla. 575, 1 So.2d 714; Ganaway v. Henderson, Fla.App. 1958, 103 So.2d 693; Pinellas Central Bank & Trust v. International Aerodyne, Inc., Fla.App.1970, 233 So.2d 872. In Binz v. Helvetia Florida Enterprises, Inc., Fla.App.1963, 156 So.2d 703, 704, cert. denied, 162 So.2d 665, appeal dism. 379 U.S. 12, 85 S.Ct. 117, 13 L.Ed.2d 24, the Florida court stated the applicable rule:

> "It is axiomatic that where a promise to pay a sum of money is made upon the consideration of a promise to perform certain service, the consideration fails if the services are not performed, and the promise based thereon is discharged."

In *Binz* there was no attempt to render any services under the contract. Our court in analyzing this rule, however, has concluded that it applies equally to the situation where there is an unsuccessful attempt to perform. Sanitary Linen Service Co. v. Alexander Proudfoot Co., 5 Cir. 1970, 435 F.2d 292.

In the instant case we can form no other conclusion but that the alleged acts of Mr. Foreman constitute an absolute refusal to perform substantial duties under the contract, rendering his entire performance unsuccessful. If we assume that he did and said that which Mrs. Singleton alleges, his conduct was so pockmarked with hostility and arrogance that Mrs. Singleton was justified in rescinding the entire contract and demanding the return of her consideration. Sanitary Linen Service v. Alexander Proudfoot Co., *supra*; Binz v. Helvetia Florida Enterprises, Inc., *supra*. We therefore hold that Mrs. Singleton's complaint states a valid cause of action for the return of the jewels or their value since she paid this much on the contract which Mr. Foreman did not successfully perform.

Moreover, Mrs. Singleton has alleged that she suffered physical and mental disturbances as a result of Mr. Foreman's conduct, and she asked, in addition to actual damages, a sum for exemplary damages. Florida recognizes a cause of action for insulting and abusive language resulting in mental distress if the conduct was sufficient to cause severe emotional distress to one of ordinary sensibilities. Slocum v. Food Fair Stores of Florida, Fla.1958, 100 So.2d 396; Korbin v. Berlin, Fla.App.1965, 177 So.2d 551, cert. denied, 183 So.2d 835; Gay v. McCaughan, 5 Cir. 1960, 272 F.2d 160. We think the conduct alleged was sufficient to state a cause of action under the *Slocum* and *Korbin* principle.

Florida, like most states, does not allow exemplary damages for simple breach of contract. However, where the acts constituting the breach also amount to an independent tort, exemplary damages may be recovered. Griffith v. Shamrock Village, Fla.1957, 94 So.2d 854. If the breach is accompanied by some intentional wrong, insult, abuse, gross negligence, or oppression, the claim for exemplary damages is properly asserted. Griffith v. Shamrock Village, *supra*; Associated Heavy Equipment Schools, Inc. v. Masiello, Fla.Ct. App.1969, 219 So.2d 465. We have held that Foreman's alleged conduct was sufficient to state an independent tort action, and, since that alleged conduct was both oppressive and showed such a great indifference to the persons and property rights of others, malice may be imputed, thus justifying punitive damages. Kirksey v. Jernigan, Fla.1950, 45 So.2d 188.

In sum, we find that Mrs. Singleton's complaint stated claims on which relief can be granted under Florida law. The facts as ultimately developed may not be congruent with the allegations contained in the complaint, but Mrs. Singleton deserves the opportunity to submit proof of her jeremiad.

The case is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.