926 So.2d 399 (2006)
Scott A. FERRIS, Esq., and Scott A. Ferris, P.A., Appellants,
v.
SOUTH FLORIDA STADIUM CORPORATION d/b/a Pro Player Stadium, and Huizenga Holdings, Inc., a Florida corporation, Appellees.
Contemporary Services Company, Intervenor.
No. 3D05-177.
District Court of Appeal of Florida, Third District.
February 1, 2006.
Rehearing Denied May 3, 2006.
*400 Jugo & Murphy; Philip D. Parrish, Miami, for appellants.
Akerman Senterfitt and Nina K. Brown and Michael Fertig and Carolina Maharbiz, Miami, for appellees.
Ford & Harrison and Pedro P. Forment and Rene F. Ruiz, Miami, for intervenor.
Before FLETCHER, WELLS, and SHEPHERD, JJ.
WELLS, J.
Scott A. Ferris, Esq. and Scott A. Ferris, P.A., appeal from a judgment on the pleadings on their tortious interference claims against South Florida Stadium Corporation d/b/a Pro Player Stadium and Huizenga Holdings, Inc. We affirm.
The complaint alleges that for approximately twelve years, in numerous lawsuits in Miami-Dade, Broward and Palm Beach Counties, attorney Ferris and his firm represented Contemporary Services, an entity that provides event staff and security at Pro Player Stadium. In 1999, James Pedersen sued Pro Player Stadium for injuries sustained while attending an event at the stadium. During discovery, the Stadium claimed that Contemporary Services was at fault because it failed to provide adequate security. Contemporary Services was joined as a defendant and hired Ferris to represent it in that action.
*401 Ferris took the position in defending Contemporary Services that Contemporary Services was not liable because it was providing only event staff, not security services, at the time Pedersen was injured. To support this defense, Ferris deposed a member of the Stadium's administrative staff to question him about whether the Stadium had paid sales tax associated with security (but not event) personnel. Within days of this deposition, Ferris and his firm were fired by Contemporary Services.
Ferris and his firm then brought suit claiming that the Stadium tortiously interfered with their relationship with Contemporary Services by insisting that Contemporary Services terminate the relationship because the Stadium was "upset by [Contemporary Services'] exposing its failure to pay sales tax." This interference, it is alleged, was unjustified because Ferris and his firm "were simply providing Contemporary Services with a vigorous defense in litigation where [Contemporary Services] was brought in by the [Stadium's] own affirmative defense pointing the finger at [Contemporary Services]."[1]
As the trial court correctly recognized, these allegations will not support a claim for tortious interference.[2] Intentional interference with a business relationship requires: (1) existence of a business relationship that affords the plaintiff with existing or prospective legal or contractual rights; (2) defendant's knowledge of that relationship; (3) an intentional and unjustified interference with that relationship by the defendant; and, (4) damage to the plaintiff resulting from the breach of that relationship. See Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812, 814 (Fla.1995); Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985).
The general rule is that an action for tortious interference will not lie where *402 a party interferes with an at will contract such as the one involved here. See United States Sav. Bank v. Pittman, 80 Fla. 423, 86 So. 567, 573 (1920)(confirming that an attorney-client relationship is "at will" and may be terminated at any time with or without cause); see also Rosenberg v. Levin, 409 So.2d 1016, 1021 (Fla.1982)(confirming the attorney-client relationship is one in which the client enjoys a "greater freedom to change legal representatives than might be tolerated in other employment relationships"); Greenberg v. Mount Sinai Medical Ctr. Of Greater Miami, Inc., 629 So.2d 252, 255 (Fla. 3d DCA 1993)(noting that "[t]he general rule is that an action for tortious interference will not lie where a party tortiously interferes with a contract terminable at will"). It is only where interference with an at will relationship is direct and unjustified that such interference is actionable. See Perez v. Rivero, 534 So.2d 914, 916 (Fla. 3d DCA 1988).
Conceding the Stadium and Huizenga intended, as alleged, to interfere with the FerrisContemporary Services at will attorney-client relationship by insisting on Ferris' termination, the inquiry becomes whether that interference was unjustified. As Ferris in his brief concedes, those who encourage or cause a rupture in the attorney-client relationship by means of fraud, coercion, or other wrongdoing are not justified in doing so. See Ellis Rubin, P.A. v. Alarcon, 892 So.2d 501, 503 (Fla. 3d DCA 2004)(concluding that an attorney could state a claim for tortious interference where the client and a third party had engaged in fraud and collusion by falsely representing that an action had been dropped while concealing a settlement that would have entitled the attorney to a contingency fee). However, in this case, no fraud, collusion or other wrongdoing is alleged.
The complaint alleges only that the Stadium and Huizenga were displeased with a legitimate defense Ferris had asserted on Contemporary Services' behalf; that the Stadium and Huizenga insisted that Contemporary Services fire the attorney asserting this defense; and that the Stadium and Huizenga "knew that [Contemporary Services] would be forced to acquiesce to [their] demand rather than risk losing its lucrative business relationship with [the Stadium and Huizenga]." These allegations detail no wrongdoing on the Stadium and Huizenga's part.
Voicing displeasure with the positions taken by a co-defendant does not constitute wrongdoing. Insisting that a co-defendant terminate an attorney for advancing certain unfavorable positions also constitutes no wrongdoing. This is so even where, as here, the demand is made with knowledge that the co-defendant will most likely agree rather than risk financial advantage. In short, the complaint fails to allege that the Stadium and Huizenga engaged in any conduct proscribed by statute, which constitutes an independent tort, or which might be described as "bad." See GNB, Inc. v. United Danco Batteries, Inc., 627 So.2d 492, 494 (Fla. 2d DCA 1993) (Altenbernd, J., dissenting). Under the circumstances, we agree that Ferris did not state a cause of action for intentional interference with the instant at will relationship.
Affirmed.
NOTES
[1] Specifically, as to the Stadium, the complaint alleges:

16. Ten days after ... [the] deposition [of the Stadium's administrative staff member], Plaintiffs were advised by [Contemporary Services] that it was terminating their long standing relationship ... because the Defendant, [the Stadium], had pressured [Contemporary Services] into terminating their relationship. Plaintiffs were advised that [the Stadium] was insisting on Plaintiffs' termination because it was upset by Plaintiffs' exposing its failure to pay sales tax.
17. The [Stadium's] actions in demanding that [Contemporary Services] terminate its relationship with Plaintiffs were done intentionally to punish Plaintiffs for having raised [the Stadium's] failure to pay required sales tax in the [personal injury] litigation, and to ensure that a similar line of questioning would not be used in future cases.
18. The [Stadium's] actions in demanding that [Contemporary Services] terminate its relationship with Plaintiffs were unjustified in that Plaintiffs were simply providing [Contemporary Services] with a vigorous defense in litigation where [Contemporary Services] was brought in by the [Stadium's] own affirmative defense pointing the finger at [Contemporary Services].
19. The [Stadium] knew that [Contemporary Services] would be forced to acquiesce to the [Stadium's] demand that Plaintiffs be terminated rather than risk losing its lucrative business relationship with [the Stadium].
20. As a direct and proximate result of the [Stadium's] intentional and unjustified interference with Plaintiffs' business relationship with [Contemporary Services], the Plaintiffs have suffered a loss of income in the past, loss of prospective income, and great mental anguish in the past and in the future.
The same allegations are asserted against Huizenga in paragraphs 31 through 35 of the complaint.
[2] Ferris and his firm also sought to recover against both the Stadium and Huizenga for intentional infliction of emotional distress. Ferris and his firm do not seek appellate relief from the order dismissing those claims.