**Laura C. WEIR, Deceased, By and Through Elizabeth A. WEIR, her daughter, Executrix of her Estate, Plaintiff,**

v.

**MERRILL LYNCH PIERCE FENNER AND SMITH, INC., and William Laudani, Defendants.**

No. 83–0923–CIV–EPS.

United States District Court,
S.D. Florida,
Miami Division.

May 15, 1984.

Thomas Meeks, Floyd, Pearson, Stewart, Richman, Greer, Weil & Zack, P.A., Miami, Fla., for plaintiff.

Patricia Cowart, Ruden, Barnett, McClosky, Schuster & Russell, P.A., Miami, Fla., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Defendants' Motion to Dismiss. Having reviewed the record in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that said Motion be GRANTED in Part and DENIED in Part.

Being before this Court, the Defendants request that Plaintiff's claims be dismissed on the grounds that: (1) no private right of action for a violation of New York Stock Exchange (NYSE) Rule 405 exists; (2) comity considerations and the res judicata effect of the prior state court order to arbitrate dictate dismissal of the claims in their entirety; (3) the federal claims fail to plead fraud with sufficient particularity; (4) the federal claims fail to state a claim upon which relief can be granted.

### I. Factual Background

In ruling on a Motion to Dismiss the Court must accept as true the facts alleged in the Complaint. *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir.1969). From this perspective the underlying record reveals that during the month of August 1979 the Plaintiff, Laura Weir (Weir), entered into a stockbroker-customer relationship with Defendant William Laudani (Laudani), an employee of the Defendant Merrill Lynch Pierce Fenner and Smith, Inc., (Merrill). Mrs. Weir placed funds approximately equal to $100,000 with the express intention that these funds be managed in a secure and conservative manner. These funds constituted almost all of her assets. The Defendants were made aware of Mrs. Weir's inexperience and lack of sophistication in the stock market and other business considerations; however, it is alleged that Laudani informed Mrs. Weir that her account would earn a greater return if she pursued a higher risk investment plan and that any loss resulting from such investments was insured up to the sum of $400,000. In addition, Laudani failed to provide Weir with information sufficient to keep her adequately informed of her investment risks. Plaintiff also alleges that on August 5, 1980, Laudani induced the Plaintiff to grant *full discretionary control* and authority to effect transactions on her behalf without limitation. Plaintiff claims that this resulted in reckless and wanton investments, which had the effect of depleting her account through an overly aggressive trading program in excessive trading, excessive commissions, and predominantly unsuccessful investments. A major portion of Mrs. Weir's investments was lost to such activity.

On February 2, 1982, Plaintiff first commenced suit in the state court, making similar factual allegations to the case later filed in the federal court. The present federal complaint comprises the same claims as did the state court complaint, except for the following additional claims contained in this federal complaint:

1) violation of § 10 of the Securities Exchange Act of 1934;

2) violation of Rule 10b–5 promulgated under the 1934 Act; and

3) violation of New York Stock Exchange Rule 405.

## II. *Comity Considerations and Res Judicata*

 The state court already rendered its decision ordering arbitration, pursuant to a contractual agreement found to previously exist between the parties. Principles of comity suggest that a federal court give full recognition to a state court's adjudication of state law issues. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Accordingly, this Court finds itself bound by the state court arbitration order as to state claims. *Ultracashmere House Ltd. v. Meyer,* 664 F.2d 1176, 1183 (11th Cir.1981); *Government Personnel Mutual Life Insurance Co. v. Edward J. Kays,* 584 F.2d 738, 799 (5th Cir.1978).

## III. *Federal Claims*
### A) THERE IS A THREAT OF COLLATERAL ESTOPPEL

The Court recognizes that there is a considerable threat of binding this federal forum, through collateral estoppel, by allowing an arbitrator to make an initial appraisal of the evidence and to form conclusions on the issues central to the disposition of the case at bar. *See Miley v. Oppenheimer and Co., Inc.,* 637 F.2d 318, 336 (5th Cir.1981). Although it might appear reasonable to stay the arbitration proceeding pending resolution of the federal claims, case law in this area is not well settled. *See, e.g. Piambino v. Bailey,* 610 F.2d 1306, 1334 (5th Cir.1980); *Merrill Lynch Pierce Fenner and Smith, Inc. v. Haydu,* 675 F.2d 1169, 1173 (11th Cir.1982). *Piambino* examines the three exceptions to the Anti-Injunction statute, 28 U.S.C. § 2283, as it applies to the Securities Exchange Act of 1934, holding specifically that a federal court considering federal securities claims cannot enjoin a state court's arbitration order. The Court accepts this rationale behind *Piambino* and now refuses to interfere with the arbitration hearing ordered by the state court.

### B) PLAINTIFF PLEADS FRAUD WITH PARTICULARITY

 The Court recognizes that in order to prove liability in all churning cases an investor must allege: (1) excessive trading in light of the particular expressed investment objectives; (2) control by the broker of the trading account; (3) intent to defraud or with wilfull disregard for investor's interest. *Miley v. Oppenheimer and Co., Inc.,* 637 F.2d 318, 324 (5th Cir.1981). The record here amply supports each of the three requisite elements. *Cf., Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976) (allegations of intent to deceive, manipulate, or defraud by the Defendants suffice to maintain, a private cause of action under § 10(b) and Rule 10b–5). In addition, the Court notes that the purpose of Rule 9(b), F.R. C.P., is to put defendants on notice of the charges against them. From the numerous factual allegations surrounding the fraud claim, including the allegation that the whole business relationship was tainted with fraud, the Court concludes that the Complaint states a cause of action sufficient inform Defendants' of the nature of the fraud claim.

### C) THE COMPLAINT STATES A CLAIM FOR WHICH RELIEF CAN BE GRANTED

 The law recognizes that, where an investor fails to exhibit due diligence, an action for misrepresentation under Rule 10b–5 cannot succeed. Those who have failed to pursue their own interests with care and good faith should be precluded from entertaining an action under Rule 10b–5. *Dupuy v. Dupuy,* 551 F.2d 1005, 1014 (5th Cir.1977). However, dismissal is warranted only when it appears beyond doubt that the Plaintiff would not be able to prove any facts that support his claim.

*Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957); Rule 12(b)(6) F.R.C.P. The allegations of the Complaint must be viewed in the light most favorable to the Plaintiff. *Singleton v. Foreman,* 435 F.2d 962, 968 (5th Cir.1970). This Court finds that the facts as alleged, when considered in light of the body of case law pertaining to securities suits, manifest a cause of action upon which relief might be granted.

### D) NEW YORK STOCK EXCHANGE RULE 405 CLAIM

The Court finds that the New York Stock Exchange Rule 405 (NYSE Rule 405) was not intended to grant the individual investor a private right of action. In particular, investors are precluded from entertaining a private right of action pursuant to Rule 405 of the New York Stock Exchange. *Thompson v. Smith Barney Harris Upham and Co., Inc.,* 709 F.2d 1413, 1419 (11th Cir.1983). In accordance with prior case law, this Court must dismiss the New York Stock Exchange Rule 405 claim.