In re Stephen M. VOLTAREL, Debtor.

PhyMatrix Management Company,
Inc., Plaintiff,

v.

Stephen M. Voltarel, Defendant.

In re Napoleon Luis Pinzon, Debtor.

PhyMatrix Management Company,
Inc., Plaintiff,

v.

Napoleon Luis Pinzon, Defendant.

In re Agustin A. Martin, Debtor.

PhyMatrix Management Company,
Inc., Plaintiff,

v.

Agustin A. Martin, Defendant.

Bankruptcy Nos. 98–9512–8P7,
98–9265–8B7, 98–9798–8G7.
Adversary Nos. 98–472, 98–473, 98–474.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 7, 1999.

M. Lynn Pope Bikowitz, Law Office of M. Lynn Pope Bikowitz, Tampa, FL, for plaintiff.

Michael C. Markham, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Clearwater, FL, for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

On May 29, 1998, Dr. Napoleon Pinzon (Pinzon), Dr. Stephen Voltarel (Voltarel) and Dr. Agustin A. Martin (Martin) filed their voluntary Petitions for relief under Chapter 7 of the Bankruptcy Code on May 29, 1998, June 3, 1998 and June 5, 1998, respectively. The Plaintiff, PhyMatrix Management Company (PhyMatrix), filed an adversary proceeding against each of the Debtors, objecting to their respective discharges pursuant to 11 U.S.C. §§ 727(a)(4) and 727(a)(2)(B).

The immediate matter under consideration is a joint Motion for Summary Judgment filed in Adversary Proceeding 98–472 by the Debtors named in each of the above-captioned Chapter 7 cases. The Debtors seek a determination of the threshold issue of whether PhyMatrix lacks standing to challenge the Debtors' rights to their general bankruptcy discharges.

This Court, with the consent of Judge Baynes and Judge Glenn, consolidated the three adversary proceedings for the purpose of determining Plaintiff's standing to bring any of the adversary proceedings, pursuant to Federal Rule of Civil Procedure 42(a), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7042.

The Court reviewed the Motion and the record, heard argument of counsel and finds there is basically no disagreement among the parties as to the underlying facts. Those facts may be summarized as follows:

Access America Medical Care, Inc. (AAMC), a Delaware corporation, was a professional corporation owned by several physicians. Stephen Voltarel, Agustin A. Martin, and Napoleon L. Pinzon, the Debtors, were shareholders of AAMC. AAMC was the sole shareholder of Access Medical Care, Inc. (AMC), a medical practice with several locations. PhyMatrix provides management services to physicians and medical practices.

On January 23, 1997, PhyMatrix, AAMC and all of AAMC's shareholders, including the Debtors, entered into an Asset Purchase Agreement. Pursuant to the Asset Purchase Agreement, AAMC and the shareholders agreed to sell to PhyMatrix, substantially all of the assets used in the AMC practice.

As part of the sale transaction, AMC and PhyMatrix entered into a Practice Management Agreement dated January 30, 1997. Pursuant to the Practice Management Agreement, among PhyMatrix's duties was the duty to help AMC to expand its practice. In return, AMC was to pay PhyMatrix certain fees which have three components. The first fee component was an operations fee. The second component was a general management fee in the amount of $450,000.00 per year. The third component was a performance fee, with the fee being based upon 30% of the annual net income of the practice, calculated after deducting the operations fee, the general management fee and the salaries to the physicians employed by AMC. The revenues of the practice never

reached the level where a performance fee had to be paid.

In connection with the transaction, each of the Debtors executed a Guaranty, absolutely and unconditionally guaranteeing the payments of the amount due upon termination of the Practice Management Agreement.

By letter dated March 25, 1998, PhyMatrix informed AMC that as a result of numerous breaches of the Practice Management Agreement by AMC, PhyMatrix was terminating the Practice Management Agreement. In the letter, PhyMatrix demanded that the Debtors, as guarantors, pay PhyMatrix the guaranteed amount of $3,600,000. Among the various breaches stated, PhyMatrix listed AMC's position that the Practice Management Agreement was not a legal arrangement.

The Debtors argue that PhyMatrix is not a creditor of the Debtors and that, therefore, PhyMatrix lacks standing to proceed with the Adversary Proceedings to seek the denial of the Debtors' respective discharges. The underlying basis for this argument is PhyMatrix's contention that the Practice Management Agreement is an unenforceable, illegal fee splitting agreement. They contend that as a result, AAMC owes no debt to PhyMatrix under the Practice Management Agreement and that therefore, the Guarantees, guaranteeing AAMC's obligations under the Practice Management Agreement are also unenforceable.

PhyMatrix, on the other hand, argues that PhyMatrix is a creditor with standing to maintain these Adversary Proceedings. PhyMatrix points to the Debtors' Amended Schedules, each listing PhyMatrix as a creditor holding a disputed, contingent, and unliquidated claim. In addition, PhyMatrix contends that because the Debtors' argument of illegality runs only to the performance fee and not the remainder of the Practice Management Agreement, the performance fee provision may be severed and the remainder of the Practice Management Agreement is enforceable.

■ The Debtors contend that the Practice Management Agreement is void because the third component of the fee structure violates *Florida Statute* §§ 458.331(1)(i) and 817.505(*l*) which prohibits any split fee arrangement in any form whatsoever. Under Florida law, an agreement which violates a statute, or which cannot be performed without violating a statute, is illegal and void, and will not be enforced. *See Local No. 234 v. Henley & Beckwith, Inc.,* 66 So.2d 818 (Fla.1953). However, an illegal portion of a bilateral contract may be eliminated, leaving the remainder of the contract in force and effect when, "the illegal portion of the contract does not go to its essence, and where with the illegal portion eliminated, there still remains of the contract valid legal promises on one side which are wholly supported by valid legal promises on the other." *Local No. 234,* at 821–22 (citation omitted).

■ Generally, contract that have been held to be indivisible where the provision that is invalidated as illegal is a substantial part of the benefit to be gained by one of the parties. *See Slusher v. Greenfield,* 488 So.2d 579 (Fla. 4th DCA 1986) (senior shareholder provisions held indivisible from employment agreement where to sever meant that senior shareholder would have had same duties but lost substantial benefits he contracted to receive); *Singleton v. Foreman,* 435 F.2d 962 (5th Cir. 1970) (Where eliminating illegal retainer fee provision would have eliminated the greater portion of the consideration contrary to parties' original mutual understanding, employment agreement was not divisible).

■ Here, the performance fee provision never came into effect during the short period of time that the Practice Management Agreement was in effect. Thus, the Debtors cannot seriously contend that severing the provision would be contrary to the parties' original mutual understand-

ing. The practice actually loses nothing under the Agreement by severing the performance fee provision.

Furthermore, the Debtors cannot argue that severing the performance fee provision would eliminate a substantial portion of the consideration. This is because the consideration under the provision is running to PhyMatrix. PhyMatrix, the only party who would benefit from the performance fee provision of the Agreement, happens to be the party suggesting that the performance fee provision be severed in order to maintain the validity of the Agreement. Thus, it is difficult for the Debtors to continue to argue that the entire Agreement is illegal when the beneficiary of provision is promoting to sever it.

Having reviewed the Practice Management Agreement and the record, this Court is satisfied that the performance fee provision of the Practice Management Agreement is severable and, therefore, the Practice Management Agreement is not illegal and void. It follows that the Guarantees of AMC's obligations under the Practice Management Agreement are enforceable and PhyMatrix is a creditor of each of the Debtors with standing to maintain these adversary proceedings.[1]

Based upon the foregoing, this Court is satisfied that the Motion should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Debtors' Motion for Summary Judgment be, and the same is hereby denied. A pretrial conference is hereby scheduled for **June 30, 1999** at **11:00 a.m.** before the undersigned in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida.

DONE AND ORDERED.

---

1. Section 727(c)(1) expressly provides that only a "creditor" may object to the granting of a debtor's discharge. "Creditor" is defined in Section 101(10) of the Bankruptcy Code as an "entity that has a claim against the debtor" that arose prepetition. 11 U.S.C. § 101(10). "Claim" is defined in Section 101(5) of the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" or is a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5).